**EXHIBIT E**



**HARDER MIRELL & ABRAMS**

1801 AVENUE OF THE STARS, SUITE 1120
LOS ANGELES, CA 90067
424.203.1600 • WWW.HMAFIRM.COM

September 13, 2013

**VIA EMAIL**

James C. Potepan, Esq.
Chad Mandell, Esq.
LECLAIRRYAN LLP
725 S. Figueroa Street, Suite 350
Los Angeles, California 90017
Email: james.potepan@leclairryan.com; chad.mandell@leclairryan.com

Re:   *Bradley Cooper and Liam Neeson v. Vutec Corporation et al.*
Central District of California, Western Division, Case No. CV 13-02951 SJO (SHx)

Dear Mr. Potepan and Mr. Mandell:

This correspondence is in response to your letter dated September 11, 2013, memorializing the telephonic conference that was held on September 9, 2013, between myself and Kimberlina N. McKinney, as counsel for Plaintiffs Bradley Cooper and Liam Neeson (collectively "Plaintiffs"), and the two of you, as counsel for First Impressions Theme Theatres ("First Impressions").

Your letter raised several issues that require correction.

**Depositions**

We agreed to discuss the issue of deposition scheduling on September 16, 2013. Contrary to your letter, I did not promise to have dates that Plaintiffs would be available for their depositions. As you will no doubt recall, Plaintiffs served First Impressions with a Notice of Deposition of Person Most Knowledgeable on **May 28, 2013**. First Impressions did not serve any deposition notices upon Plaintiffs until July 30, 2013. Plaintiffs' depositions clearly have priority and must be scheduled first; First Impressions is required to provide available deposition dates without reference to Plaintiffs' availability.

Moreover, your refusal to provide us with **any dates** for your clients' depositions during our conference call of September 9th – notwithstanding the phone conversation that Defendant Vutec's counsel David Swift had just that morning with Sarah Luppen of our office in which he

LECLAIRRYAN LLP
September 13, 2013
Page 2

advised us that **all of Defendants' counsel** had agreed to depositions of their clients during the week of December 9, 2013 – has created uncertainty that has rendered it impossible for us to have a meaningful conversation with Plaintiffs about their availability for depositions thereafter.[1]

Moreover, there is an additional issue with respect to the scheduling of all depositions. Specifically, Plaintiffs cannot conduct meaningful depositions of Defendants without having received their full and complete responses to Plaintiffs' interrogatories and document production requests. First Impressions promised, but has delayed, its supplemental document production which you indicated was forthcoming over a month ago, as also memorialized in Ms. Luppen's attached August 7th email. Currently, First Impressions' document production is deficient in at least the following respects:

1. First Impressions' insurance policies covering the policy periods of 2011, 2012 and 2013;
2. Documents supporting First Impressions' statute of limitations defense regarding the alleged upload date of the advertisements that contain Plaintiffs' images;
3. First Impressions' magazine advertisements that contain Plaintiffs' images; and
4. Electronic versions of all of First Impressions' advertisements that contain Plaintiffs' images.

Unless and until you tell you finally tell us when at least these long-ago promised documents will actually be produced, we cannot even begin to meaningfully discuss the scheduling of Defendants' depositions and the follow-on depositions of Plaintiffs. Consequently, if you wish to proceed with a conference call on September 16, 2013, the sole subjects of that call will need to be: (1) the contents of First Impressions' supplemental document production, and when those documents will be produced; and (2) the availability of Defendants for their depositions. Alternatively, we can obviate the need for such a call if you will simply provide us with the answers to these questions by return letter or email on or before September 16th. If you do so, we will then be able to conduct meaningful conversations during the ensuing week with our clients and their representatives about Plaintiffs' availability thereafter for their depositions.

I turn, therefore, to the balance of your letter.

**Other Issues**

First, we trust you received Ms. McKinney's letter of September 10, 2013, and will be prepared to provide appropriate and comprehensive responses on or before September 17.

Second, your September 11th letter states that if Ms. McKinney's inspection of certain First Impressions documents at your firm's offices on September 19, 2013, does not reveal the

---

[1] Further, the August 7, 2013, email from Ms. Luppen memorializes your prior agreement (upon which you now appear to be reneging) to coordinate with your clients and Mr. Swift regarding Defendants' deposition availability between November 25 and December 20, 2013. A courtesy copy of that email is enclosed herewith for your reference.

- 93 -

LECLAIRRYAN LLP
September 13, 2013
Page 3

existence of additional unauthorized uses or advertisements, then Plaintiffs will provide further responses to Interrogatory Nos. 1, 6 and 7 to indicate that "no additional unauthorized uses or advertisements exist." This is inaccurate. If that September 19th inspection **and the supplemental document production discussed above** do not reveal any additional unauthorized uses or advertisements, Plaintiffs will clarify that, as of September 19 or the date First Impressions completes its supplemental production (whichever comes later), Plaintiffs will then be unaware of any additional advertisements other than those previously produced in discovery. Of course, we will obviously continue to reserve the right to identify additional infringing uses or advertisements to the extent they are subsequently produced by Defendants or otherwise discovered.

Third, without accepting your letter's characterization of our September 9th conversation, appropriate supplemental responses will be provided to Interrogatory Nos. 12 and 20.

Fourth, regarding Interrogatory Nos. 13 and 14, your letter states that Plaintiffs agreed to supplement responses by stating that the subject lawsuit is the only occasion where Plaintiffs have contended that their respective intellectual property rights were used without their permission, and the only lawsuit in which their respective intellectual property was at issue. This is also inaccurate. I indicated that at the time of our response we were unaware of any other instances, but would again confer with our clients to re-confirm that fact. If we discover any other such instances of infringement within the past five (5) years that are responsive, Plaintiffs will supplement their responses accordingly.

Fifth, with respect generally to Defendants' document production requests, there must be a mutual agreement that all parties will produce privilege logs with respect to any responsive documents being withheld on such grounds. Consequently, we need you to confirm that Defendants will do so with respect to Plaintiffs' document production requests. With regard to Request No. 35 in particular, Defendants only agreed to produce responsive documents, if any, that are not privileged. With respect to Request Nos. 17 and 32, your letter is misleading in that it fails to make clear that Plaintiffs' counsel stated that they were unaware of any responsive documents beyond those already produced.

Thank you for your prompt attention to these matters. This letter is not intended as a full statement of all facts relating to this matter, and our clients continue to reserve all of their rights relevant hereto.

Yours sincerely,

DOUGLAS E. MIRELL OF
HARDER MIRELL & ABRAMS LLP

Enclosure
cc:    Kimberlina N. McKinney, Esq.
       Sarah E. Luppen, Esq.

**EXHIBIT F**



September 24, 2013

**VIA EMAIL**
Charles J. Harder
Douglas E. Mirell
Kimberlina N. McKinney
HARDER MIRELL & ABRAMS LLP
1 801 Avenue of the Stars, Suite 1120
Los Angeles, California 90067

Re:   *Bradley Cooper, et al. v. Vutec Corporation, et al.*
      LASC – West District Case No. SC120462

Dear Counsel:

Yesterday, Plaintiffs Bradley Cooper and Liam Neeson (collectively, "Plaintiffs") and Defendants Vutec Corporation and First Impressions Theme Theaters, Inc. ("First Impressions") met telephonically through their respective counsel. The sole purpose of the meeting was for Plaintiffs to finally provide Defendants with pre-December 9, 2013 deposition dates for Plaintiffs and their witnesses, Steve Lashever, Peter Hess, Jeff Wolman, and Mark Stankovich (collectively, "witnesses"). Unfortunately, Plaintiffs had no interest in participating in the meeting in good faith and continue to refuse to make Plaintiffs and their witnesses available for their depositions.

For months, Defendants have requested dates for Plaintiffs and Plaintiffs' witnesses' depositions. Plaintiffs have refused, even though their attorneys admitted yesterday that Plaintiffs and their witnesses are available for their depositions in October and November 2013.[1]

Instead of deposition dates, Plaintiffs' counsel offered a novel reason for refusing to produce their clients and witnesses at depositions. Plaintiffs argued, inaccurately, that Defendants never provided Plaintiffs with the order in which Defendants wish to depose Plaintiffs and their witnesses. However, as Plaintiffs must have been aware, Defendants have

---

[1] The only deposition date Plaintiff provided was the post-December 9, 2013 deposition date of January 9, 2013, for Plaintiff Liam Neeson's deposition in New York. Plaintiff agreed to hold this date, with the understanding the Defendants continue to insist on taking Mr. Neeson's deposition in October or November 2013.

E-mail: chad.mandell@leclairryan.com
Direct Phone: 213.337.3244
Direct Fax: 213.624.3755

725 S. Figueroa Street, Suite 350
Los Angeles, California 90017
Phone: 213.488.0503 | Fax: 213.624.3755

CALIFORNIA \ CONNECTICUT \ MASSACHUSETTS \ MICHIGAN \ NEW JERSEY \  NEW YORK \ PENNSYLVANIA \ VIRGINIA \ WASHINGTON, D.C.

LeClairRyan is a Delaware Limited Liability Partnership

11605143-1              ATTORNEYS AT LAW \ WWW.LECLAIRRYAN.COM

Charles J. Harder
Douglas E. Mirell
Kimberlina N. McKinney
HARDER MIRELL & ABRAMS LLP
September 24, 2013
Page 2

never had any preference regarding the sequence of these depositions. Rather, Defendants have made every effort to reasonably accommodate Plaintiffs and their witnesses' schedules. Defendants have offered to depose Plaintiffs and Plaintiffs' witnesses virtually anytime in October, November, or the first week of December 2013. Defendants have also been willing to travel to New York to depose Mr. Neeson and Mr. Hess, since they have indicated that this would be more convenient for them.

At the meeting, Plaintiffs' counsel also announced another precondition to their producing Plaintiffs and Plaintiffs' witnesses for depositions. Specifically, Plaintiffs stated that Defendants' previously scheduled depositions must now be rescheduled. Plaintiffs counsel ignored the fact that it was Plaintiffs who previously demanded that Defendants' depositions take place in December or January. Plaintiffs' counsel also ignored the fact that Defendants and their counsel went to great lengths to arrange their busy schedules because Plaintiffs insisted that both Defendants' depositions be taken in the same trip to Miami, Florida. Plaintiffs' counsel offer no explanation for their new demand that Defendants' depositions be rescheduled, aside from asserting that Plaintiffs' wish to maintain "priority" over the deposition schedule.

However, as Defendants have pointed out, there is no deposition "priority" in federal court. Moreover, it is clear that Plaintiffs' earlier insistence that they be permitted to depose Defendants in December 2013 or January 2014 was mere gamesmanship. Plaintiffs' thought that a "priority" rule applied in federal court. Accordingly, they insisted that Defendants' depositions take place in December or January because Plaintiffs believed this would deprive Defendants of the opportunity to conduct depositions before the January 2014 discovery cutoff. Now that Plaintiffs appear to realize that there is no "priority" rule, Plaintiffs want to reschedule Defendants depositions.

Defendants explained that it would be very difficult, if not impossible, to reschedule Defendants' depositions at this juncture. Defendants have already arranged their schedules around Plaintiffs' earlier requests for dates in December 2013. Incredibly, Plaintiffs ignored Defendants' counsel and, **during the meeting,** found time to email deposition notices purporting to reschedule Defendants' depositions to October 9 and 10, 2013.

11605143-1

- 96 -

Charles J. Harder
Douglas E. Mirell
Kimberlina N. McKinney
HARDER MIRELL & ABRAMS LLP
September 24, 2013
Page 3

Ultimately, another meeting was scheduled for **Friday, September 28, 2013.** Once again, Plaintiffs have promised that they will provide pre-December 9, 2013 deposition dates for Plaintiffs and Plaintiffs' witnesses. In contrast to representations made in Mr. Mirell's September 24, 2013 email, however, Defendants never agreed that they would provide new dates for their depositions. Nor did Defendants agree that their depositions would take place prior to the depositions of Plaintiffs and their witnesses. Nor did Defendants agree to produce any of the documents in Mr. Mirell's September 13, 2013 letter -- Defendants only indicated that they would consider the requests Mr. Mirell made and respond to his letter in due course. Once again, Plaintiffs are unacceptably trying to block Defendants from conducting discovery.

Plaintiffs agreed to provide further responses on behalf of 22nd and Indiana, in response to First Impressions subpoena seeking documents and its September 13, 2013 letter. However, Plaintiffs did not address the further responses they promised to provide to First Impressions' Interrogatories, Set One, and Requests for Production, Set One. **Please inform Defendants today** when you intend to provide these further responses, which you previously indicated you could provide by September 23, 2013.

Very truly yours,

LeClairRyan LLP

CHAD M. MANDELL

CMM:mr
cc:    James C. Potepan
       David Swift
       Laura Castner

11605143-1

- 97 -

**EXHIBIT  G**

## Mandell, Chad

| | |
|---|---|
| **From:** | Kimberlina McKinney <KMcKinney@hmafirm.com> |
| **Sent:** | Tuesday, September 24, 2013 8:45 PM |
| **To:** | Potepan, James C.; dswift@kwikalaw.com; lcastner@kwikalaw.com; Mandell, Chad |
| **Cc:** | Douglas Mirell; Charles Harder; Sarah Luppen |
| **Subject:** | RE: Cooper v. Vutec Corp, et al. -- Attached is Letter Memorializing 9-23-13 Telephonic Meeting |
| **Attachments:** | Ltr Memorializing 9-23-13 Meeting re Depo Dates for Plf & Witnesses.pdf |

Dear Mr. Mandell-

For apparent reasons, we disagree strenuously with the characterizations of events and circumstances found in your September 24, 2013, letter. If necessary at a later date, we will address these matters in an appropriate form.

In response to your letter's last paragraph regarding the expected date of Plaintiffs' supplemental responses, we intend to provide supplemental responses to the 22nd and Indiana subpoena and First Impressions Interrogatories, Set One, as well as provide a supplemental document production by this Friday, September 27, 2013.

Also, we are scheduled to speak this **Friday, September 27, 2013**, not September 28 as your letter indicates.

Regards,

Kimberlina



Kimberlina N. McKinney
KMcKinney@HMAfirm.com
(424) 203-1614

---

**From:** Rios, Myra [mailto:Myra.Rios@leclairryan.com]
**Sent:** Tuesday, September 24, 2013 2:52 PM
**To:** Charles Harder; Douglas Mirell; Kimberlina McKinney
**Cc:** Potepan, James C.; dswift@kwikalaw.com; lcastner@kwikalaw.com; Mandell, Chad
**Subject:** Cooper v. Vutec Corp, et al. -- Attached is Letter Memorializing 9-23-13 Telephonic Meeting

Counsel:

Please find attached correspondence from Chad Mandell memorializing the telephonic meeting on September 23, 2013 regarding scheduling Plaintiffs and their witnesses' depositions.

Thank you.

1

**Myra Rios** for Chad M. Mandell, Esq.
**Legal Secretary**
LECLAIRRYAN
725 S. Figueroa Street, Suite 350
Los Angeles, California 90017
(213) 337-3219 Direct
(213) 624-3755 Fax
Myra.Rios@leclairryan.com
http://www.leclairryan.com
LeClairRyan is a Delaware Limited Liability Partnership

Please consider the environment before printing this email.

* This e-mail may contain confidential or privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail with a copy to emailadministrator@leclairryan.com and delete this e-mail and all copies and attachments. IRS Circular 230 Notice: Unless specifically stated otherwise, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

2

**EXHIBIT  H**



1  JAMES C. POTEPAN (SBN 107370)
   Email: james.potepan@leclairryan.com
2  COURTNEY E. CURTIS (SBN 245231)
   Email: courtney.curtis@leclairryan.com
3  LECLAIRRYAN LLP
   725 S. Figueroa Street, Suite 350
4  Los Angeles, CA 90017
   Telephone: (213) 488-0503
5  Facsimile: (213) 624-3755

6
7  Attorneys for Defendant
   FIRST IMPRESSIONS THEME THEATERS,
8  INC.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  BRADLEY COOPER, an individual;          Case No. CV13-02951 SJO (SHx)
    and LIAM NEESON, an individual,
13                                          Hon. Judge S. James Otero
            Plaintiffs,
14
          v.
15                                          **DEFENDANT FIRST IMPRESSIONS
    VUTEC CORPORATION, a Florida            THEME THEATERS, INC.'S FIRST
16  corporation; FIRST IMPRESSIONS          SET OF INTERROGATORIES TO
    THEME THEATERS, INC., a Florida         PLAINTIFF LIAM NEESON**
17  corporation; and DOES 1-20, inclusive,

18          Defendants.

19  VUTEC CORPORATION, a Florida
    corporation,
20
            Cross-Claimant,
21
          v.
22
    FIRST IMPRESSIONS THEME
23  THEATRES, INC., a Florida
    corporation,
24
            Cross-Defendant.
25

26  / / /

27  / / /

28

11323389v1                       1                          41123.1000
      FIRST IMPRESSIONS' INTERROGATORIES TO LIAM NEESON, SET ONE

1  PROPOUNDING PARTY:      Defendant First Impressions Theme Theatres, Inc.

2  RESPONDING PARTY:       Plaintiff Liam Neeson

3  SET NO.:                One (Nos. 1-20)

4       Defendant First Impressions Theme Theaters, Inc. ("First Impressions")

5  hereby requests that Plaintiff Liam Neeson answer the following interrogatories

6  pursuant to Federal Rule of Civil Procedure 33, within 30 days.

7                          **DEFINITIONS**

8       Words in CAPITALS in the following interrogatories are defined as follows:

9       ACTION means the present case, entitled *Bradley Cooper and Liam Neeson*

10 *v. First Impressions Theme Theatres, Inc., et al.*, Case No. CV13-02951 SJO (SHx).

11      COMMUNICATION includes correspondence, notes, e-mails, faxes,

12 memoranda and all other forms of communication between two or more

13 PERSONS.

14      DEFENDANTS mean, jointly and severally, the defendants in this action,

15 First Impressions Theme Theatres, Inc., and Vutec Corporation.

16      FIRST IMPRESSIONS means defendant First Impressions Theme Theatres,

17 Inc.

18      IDENTIFY means to state a PERSON'S name, address, and telephone

19 number, and, for natural persons, his or her employer.

20      INTELLECTUAL PROPERTY means, jointly and severally, the names,

21 trade names, trademarks, trade dress, privacy rights, images, photographs, and/or

22 likenesses that PLAINTIFFS contend in this action were used by DEFENDANTS

23 without proper authorization.

24      NEESON means plaintiff Liam Neeson.

25      PERSON includes a natural person, firm, association, organization,

26 partnership, business, trust, corporation, or public entity.

27      PLAINTIFFS mean, jointly and severally, the plaintiffs in this action,

28 Bradley Cooper and Liam Neeson.

1     YOU and YOUR includes NEESON, his agents, managers, employees,

2 attorneys, accountants, investigators, and anyone else acting on his behalf.

3                     **INTERROGATORIES**

4 **INTERROGATORY NO. 1**

5     Identify and describe each and every use of NEESON'S INTELLECTUAL

6 PROPERTY by DEFENDANTS that YOU contend in this ACTION was

7 unauthorized.

8 **INTERROGATORY NO. 2**

9     IDENTIFY all PERSONS who own any copyrights in connection with The

10 A-Team film (2010).

11 **INTERROGATORY NO. 3**

12     IDENTIFY all PERSONS who own the copyright in the movie still from The

13 A-Team film depicting PLAINTIFFS, as referenced in paragraph 2 of YOUR

14 complaint in this ACTION.

15 **INTERROGATORY NO. 4**

16     State the PERSON who first discovered the DEFENDANTS' use of

17 NEESON'S INTELLECTUAL PROPERTY that YOU contend in this ACTION

18 was unauthorized, and the date of such discovery.

19 **INTERROGATORY NO. 5**

20     State the date upon which NEESON first became aware of the

21 DEFENDANTS' use of NEESON'S INTELLECTUAL PROPERTY that YOU

22 contend in this ACTION was unauthorized.

23 **INTERROGATORY NO. 6**

24     Identify and describe each advertisement that YOU contend in this ACTION

25 was an advertisement published by FIRST IMPRESSIONS without authorization.

26 **INTERROGATORY NO. 7**

27     Identify and describe each advertisement that YOU contend in this ACTION

28 was an advertisement published by Defendant Vutec Corporation without

11323389v1                            3                         41123.1000

FIRST IMPRESSIONS' INTERROGATORIES TO LIAM NEESON, SET ONE

1   authorization.

2   **INTERROGATORY NO. 8**

3      State the dollar amount in licensing fees and/or royalties that YOU contend

4   FIRST IMPRESSIONS would have had to pay YOU for use of NEESON'S

5   INTELLECTUAL PROPERTY to the same extent and in the same manner in

6   which it was used in the advertisements at issue in this ACTION.

7   **INTERROGATORY NO. 9**

8      IDENTIFY all PERSONS from whom YOU contend FIRST IMPRESSIONS

9   would have to seek permission or authorization from to obtain a license to use the

10   movie still image from The A-Team film (2010) that is at issue in this ACTION.

11   **INTERROGATORY NO. 10**

12      State the dollar amount of fees, revenue, royalties, and any other income

13   YOU contend YOU have lost as a result of DEFENDANTS' use of NEESON'S

14   INTELLECTUAL PROPERTY that YOU contend in this ACTION was

15   unauthorized.

16   **INTERROGATORY NO. 11**

17      State the dollar amount of fees, revenue, royalties, and any other income

18   YOU contend YOU have lost as a result of FIRST IMPRESSIONS' use of

19   NEESON'S INTELLECTUAL PROPERTY that YOU contend in this ACTION

20   was unauthorized.

21   **INTERROGATORY NO. 12**

22      IDENTIFY all of NEESON'S talent agents, outside counsel, and business

23   managers, including publicity managers.

24   **INTERROGATORY NO. 13**

25      Identify and describe all other instances in which YOU have contended

26   NEESON'S INTELLECTUAL PROPERTY were used without authorization.

27   **INTERROGATORY NO. 14**

28      State all other legal actions in which NEESON'S INTELLECTUAL

1 | PROPERTY RIGHTS were at issue.

2 | **INTERROGATORY NO. 15**

3 | State all facts that support YOUR contention that FIRST IMPRESSIONS

4 | "acted willfully, maliciously, and oppressively," as alleged in paragraph 25 of

5 | YOUR complaint in this ACTION.

6 | **INTERROGATORY NO. 16**

7 | State all facts that support YOUR contention that this is an "exceptional

8 | case" as to FIRST IMPRESSIONS pursuant to 15 U.S.C. section 1117(a) of the

9 | Lanham Act, as alleged in paragraphs 37 and 43 of YOUR complaint in this

10 | ACTION.

11 | **INTERROGATORY NO. 17**

12 | State all facts that support YOUR contention that DEFENDANTS' alleged

13 | use of NEESON'S INTELLECTUAL PROPERTY is "likely to confuse, mislead,

14 | and/or deceive the consuming public and trade by creating the false impression that

15 | [DEFENDANTS'] companies, products, and services are or were approved,

16 | sponsored, endorsed, guaranteed by, and/or are in some way affiliated or associated

17 | with [PLAINTIFFS]" as alleged in paragraphs 34 and 41 of YOUR complaint in

18 | this ACTION.

19 | **INTERROGATORY NO. 18**

20 | IDENTIFY all PERSONS who claim to have been, or whom YOU believe

21 | were, confused about the source, origin, affiliation, endorsement, or sponsorship of

22 | DEFENDANTS' companies, products, or services as a result of DEFENDANTS'

23 | alleged use of NEESON'S INTELLECTUAL PROPERTY.

24 | **INTERROGATORY NO. 19**

25 | Describe each element and component of the "trade dress" that YOU contend

26 | was used without authorization as alleged in paragraph 40 and in the Fourth Cause

27 | of Action in YOUR complaint in this ACTION.

28 | ///

11323389v1    5    41123.1000

FIRST IMPRESSIONS' INTERROGATORIES TO LIAM NEESON, SET ONE

**INTERROGATORY NO. 20**

State all facts to support YOUR contention that DEFENDANTS' use of the movie still image from The A-Team (2010) film at issue in this ACTION, to the extent and in the manner it was used, advertised, promoted, or marketed DEFENDANTS' companies, products, or services.

Dated: July 9, 2013                          LECLAIRRYAN LLP

By: _____
JAMES C. POTEPAN
COURTNEY E. CURTIS
Attorney for Defendant
FIRST IMPRESSIONS THEME
THEATRES, INC.

11323389v1                          6                          41123.1000

- 105 -

## CERTIFICATE OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 725 South Figueroa Street, Ste. 350, Los Angeles, California 90017.

On July 9, 2013, I served the foregoing document(s) described as:

**DEFENDANT FIRST IMPRESSIONS THEME THEATERS, INC.'S FIRST SET OF INTERROGATORIES TO PLAINTIFF LIAM NEESON**

on interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

SEE ATTACHED SERVICE LIST

☒ **(BY MAIL)** I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY OVERNIGHT DELIVERY)** I placed said documents in envelope(s) for collection following ordinary business practices, at the business offices of LECLAIR RYAN LLP, and addressed as shown on the attached service list.  I am readily familiar with the practices of LECLAIR RYAN LLP for collection and processing of documents for overnight delivery, and said envelope(s) will be deposited for receipt by FEDEX on said date in the ordinary course of business.

☐ **(BY FACSIMILE)** I served by facsimile a true copy of the above-described document.  I am "readily familiar" with this firm's practice of processing correspondence by fax.  Under that practice documents are placed in our fax machine and are processed and received simultaneously at their destination.  The above-referenced document(s) was placed in the fax machine with all costs of faxing prepaid, directed to each party (using their fax number), listed on the attached Service List.  Once the document has been transmitted, the fax machine provides a report indicating time of completion.

☒ **(BY PERSONAL SERVICE)** I caused these documents to be delivered in such envelope(s) by hand to the office(s) of the addressee(s).

☐ **(BY ECF TRANSMISSION)** The above-referenced documents (was sent via PACER ECF to the addressee(s) as indicated on the attached service list.

☒ (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the above is true and correct.

Executed on July 9, 2013, at Los Angeles, California.

Ladonna Ellis                                          _Ira Counce_
Type or Print Name                                  Signature

11323389v1                          7                          41123.1000

FIRST IMPRESSIONS' INTERROGATORIES TO LIAM NEESON, SET ONE



**SERVICE LIST**

Re:  *Bradley Cooper, et al. v. Vutec Corporation, et al.*
       Case No.: CV13-02951 SJO (SHx)

*Via Personal Service*                                    Attorneys for Plaintiff,
                                                                       Bradley Cooper & Liam Neeson

Charles J. Harder, Esq.
Douglas E. Mirell, Esq.
HARDER MIRELL & ABRAMS LLP
1801 Avenue of the Stars, Suite 1120
Los Angeles, CA 90067
P: (424) 203-1600
F: (424) 203-1601
charder@hmafirm.com
dmirell@hmafirm.com

*Via Mail Service*                                       Attorneys for Defendant,
                                                                      Vutec Corporation

David W. Swift, Esq.
KINSEL WEITZMAN ISER KUMP & ALDISERT LLP
808 Wilshire Blvd, 3rd Floor
Los Angeles, CA 90401
P: (310) 566-9800
F: (310) 566-9872
dswift@kwikalaw.com

11323389v1                                8                                41123.1000

FIRST IMPRESSIONS' INTERROGATORIES TO LIAM NEESON, SET ONE

- 107 -

**EXHIBIT  I**

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAR 2 8 2013

John A. Clarke, Executive Officer/Clerk

By Cynthia Estrada, Deputy

1   CHARLES J. HARDER (State Bar No. 184593)
    DOUGLAS E. MIRELL (State Bar No. 94169)
2   HARDER MIRELL & ABRAMS LLP
    1801 Avenue of the Stars, Suite 1120
3   Los Angeles, California 90067
    Telephone:   (424) 203-1600
4   Facsimile:   (424) 203-1601

5   Attorneys for Plaintiffs
    BRADLEY COOPER and LIAM NEESON
6

CASE MANAGEMENT CONFERENCE

7                                              7/22/13

Gerald Rosenberg, Judge      Date      DEPT IC

8        SUPERIOR COURT OF THE STATE OF CALIFORNIA      8:30 AM

9              COUNTY OF LOS ANGELES, WEST DISTRICT

SC120462

10  BRADLEY COOPER, an individual; and      Case No.   SC120462
    LIAM NEESON, an individual,
11
                                            COMPLAINT
12           Plaintiffs,
                                            1. MISAPPROPRIATION OF
13      v.                                  COMMON LAW RIGHT OF PUBLICITY

14  VUTEC CORPORATION, a Florida            2. VIOLATION OF COMMON LAW
    corporation; FIRST IMPRESSIONS THEME    RIGHT OF PRIVACY
15  THEATERS, INC., a Florida corporation; and
    DOES 1-20, inclusive,                   3. TRADEMARK INFRINGEMENT /
16                                          FALSE ASSOCIATION
             Defendants.                    IN VIOLATION OF THE LANHAM ACT
17                                          (15 U.S.C. § 1125)

18                                          4. TRADE DRESS INFRINGEMENT / IN
                                            VIOLATION OF THE LANHAM ACT
19                                          (15 U.S.C. § 1125)

20                                          5. NEGLIGENCE

21                                          DEMAND FOR JURY TRIAL

22      Plaintiffs BRADLEY COOPER and LIAM NEESON (collectively, the "Plaintiffs") allege:

23                            SUMMARY OF THE ACTION

24      1.   Bradley Cooper and Liam Neeson are internationally recognized motion picture

25  actors, and their images and identities have substantial commercial value.

26      2.   Defendants Vutec Corporation and First Impressions Theme Theaters, Inc.

27  (collectively, the "Defendants") are companies that sell commercial products and services in the

28

-1-
COMPLAINT

1  California.

2       8.    Plaintiffs are informed and believe and based thereon alleges that the fictitiously-

3  named defendants sued herein as Does 1 through 20, and each of them, are in some manner

4  responsible or legally liable for the actions, events, transactions, and circumstances alleged herein.

5  The true names and capacities of such fictitiously-named defendants, whether individual,

6  corporate, or otherwise, are presently unknown to Plaintiffs, and Plaintiffs will seek leave of Court

7  to amend this Complaint to assert the true names and capacities of such fictitiously-named

8  defendants when the same have been ascertained.  For convenience, each reference to a named

9  defendant herein shall also refer to Does 1 through 20.  All defendants, including both the named

10  defendants and those referred to herein as Does 1 through 20, are sometimes collectively referred

11  to herein as "Defendants."

12       9.    Plaintiffs are informed and believe and based thereon allege that Defendants, and

13  each of them, were and are the agents, licensees, employees, partners, joint-venturers, co-

14  conspirators, owners, principals, and employers of the remaining Defendants, and each of them

15  are, and at all times herein mentioned were, acting within the course and scope of that agency,

16  license, partnership, employment, conspiracy, ownership, or joint venture.  Plaintiffs are further

17  informed and believe and based thereon allege that the acts and conduct herein alleged of each of

18  the Defendants were known to, authorized by, and/or ratified by the other Defendants, and each of

19  them.

20                     **BRADLEY COOPER**

21       10.    Bradley Cooper is one of the most universally recognized, highly regarded,

22  critically acclaimed, and commercially valuable motion picture actors in the world.

23       11.    Mr. Cooper has starred in the following motion pictures, among others:

24  Silver Linings Playbook, The Place Beyond the Pines, Hit and Run, The Words, The Hangover,

25  The Hangover II, Limitless, The A-Team, Valentine's Day, All About Steve, Case 39, He's Just

26  Not that Into You, New York, I Love You, and Yes Man.

27       12.    Mr. Cooper was nominated for the Academy Award Oscar, the Golden Globe, and

28  the Screen Actors Guild Award, among many other awards, for Best Actor, for his performance in

-3-<br>COMPLAINT

1    audio/visual technology industry.  Defendants prominently used Plaintiffs' photographs in their

2    advertising, marketing, and promotions, including without limitation in full-page print

3    advertisements published in numerous magazines as well as Defendants' respective commercial

4    websites—including prominently at the *homepage* of www.Vutec.com and First Impression's

5    www.CineLoungers.com (collectively, the "Advertisements").  Defendants distributed the

6    Advertisements throughout the United States and throughout the world.

7            3.      Defendants did not ask for or receive Plaintiffs' permission to use their

8    photographs, identities, personas, publicity rights, privacy rights, trademarks and trade dress in the

9    Advertisements or otherwise to associate with Defendants' companies or to market or sell

10   Defendants' commercial products and services.  Accordingly, Defendants are liable to Plaintiffs

11   for the infringement of their publicity rights, privacy rights, and trademark rights.  Pursuant to this

12   lawsuit, Plaintiffs seek compensatory damages, treble damages, punitive damages, reimbursement

13   of their attorneys' fees and costs, and a preliminary and permanent injunction to stop all further

14   use of Plaintiffs' names, images, identities, personas, and other rights of publicity, privacy, and

15   trademarks, in connection with Defendants' companies, products, and services.

16                                    THE PARTIES

17           4.      Plaintiff Bradley Cooper is an individual and resident of the County of Los

18   Angeles, State of California.

19           5.      Plaintiff Liam Neeson is an individual and resident of New York, New York, and

20   does business in the County of Los Angeles, State of California.

21           6.      Plaintiffs are informed and believe and based thereon allege that defendant Vutec

22   Corporation ("Vutec") is, and at all times relevant hereto was, a corporation organized and

23   existing under the laws of the State of Florida, doing business throughout the United States and the

24   world, including in the County of Los Angeles, State of California.

25           7.      Plaintiffs are informed and believe and based thereon allege that defendant First

26   Impressions Theme Theaters, Inc. ("First Impressions") is, and at all times relevant hereto was, a

27   corporation organized and existing under the laws of the State of Florida, doing business

28   throughout the United States and the world, including in the County of Los Angeles, State of

-2-
COMPLAINT

- 110 -

1  *Silver Linings Playbook* (2012).  Mr. Cooper also won several acting awards for that performance,

2  including:

3          a.     Broadcast Film Critics Association Award – Best Actor

4          b.     National Board of Review Award – Best Actor

5          c.     Satellite Award – Best Actor

6          d.     Hollywood Film Festival Award – Best Actor

7          e.     Palm Springs International Film Festival – Desert Palm Achievement

8                    Award

9          f.     Capri, Hollywood – Actor Award

10      13.    Mr. Cooper also received the ShoWest Convention Award for Comedy Star of the

11  Year in 2009.

12      14.    Mr. Cooper also was nominated for the following People's Choice Awards:

13          a.     Favorite Dramatic Movie Actor (2013)

14          b.     Favorite Comedic Movie Actor (2012)

15          c.     Favorite Action Star (2011)

16                              **LIAM NEESON**

17      15.    Liam Neeson is one of the most universally recognized, highly regarded, critically

18  acclaimed, and commercially valuable motion picture actors in the world.

19      16.    Mr. Neeson has starred in the following motion pictures, among many others:

20  Taken 2, The Dark Knight Rises, Battleship, Wrath of the Titans, The Grey, Unknown, The

21  Chronicles of Narnia: The Voyage of the Dawn Treader, The Next Three Days, The A-Team,

22  Clash of the Titans, After.Life, Chloe, Five Minutes of Heaven, The Other Man, Ponyo, The

23  Chronicles of Narnia: Prince Caspian, Taken, Seraphim Falls, The Chronicles of Narnia: The

24  Lion, the Witch and the Wardrobe, Breakfast on Pluto, Batman Begins, Kingdom of Heaven,

25  Kinsey, Love Actually, Gangs of New York, K-19: The Widowmaker, Gun Shy, The Haunting,

26  Star Wars: Episode I – The Phantom Menace, Les Miserables, Michael Collins, Before and After,

27  Rob Roy, Nell, Schindler's List, Ruby Cairo, Ethan Frome, Leap of Faith, Husbands and Wives,

28  Shining Through, Under Suspicion, Crossing the Line, Darkman, Next of Kin, High Spirits, The

1 | Good Mother, The Dead Pool, Satisfaction, Suspect, A Prayer for the Dying, Duet for One, The

2 | Mission, Lamb, The Innocent, The Bounty, Krull, and Excalibur.

3 |     17.    Mr. Neeson has been nominated for more than thirty (30) acting awards, and has

4 | won many of them. His nominations have included the Academy Award Oscar and the Golden

5 | Globe for Best Actor for his performance in *Schindler's List* (1994); two other Golden Globe, Best

6 | Actor nominations for *Kinsey* and *Michael Collins*, respectively; and a nomination for the 2013

7 | People's Choice Award for Best Dramatic Movie Actor. Mr. Neeson has won the following

8 | acting awards, among many others:

9 |     a.    British Independent Film Award, 2010

10 |     b.    Chicago Film Critics Association Award, Best Actor for

11 |         *Schindler's List*, 1993

12 |     c.    Cognac Film Festival, Best Actor for *Under Suspicion*, 1991

13 |     d.    Evening Standard British Film Award, Best Actor for

14 |         *Michael Collins*, 1996

15 |     e.    Irish Film and Television Award, Best Actor for *Kinsey*, 2004

16 |     f.    Los Angeles Film Critics Association Award, Best Actor for *Kinsey*,

17 |         2004

18 |     g.    Palm Springs International Film Festival, Achievement Award, 2005

19 |     h.    Taormina International Film Festival Award, 2000

20 |     i.    Venice Film Festival, Best Actor for *Michael Collins*, 1996

21 |                             **DEFENDANTS' WRONGFUL CONDUCT**

22 |     18.    Defendants prominently used Plaintiffs' photographs, identities, personas, publicity

23 | rights, trademarks and trade dress (collectively, "Plaintiffs' Rights") in the Advertisements and

24 | otherwise to advertise, market, and promote Defendants' companies, commercial products, and

25 | commercial services.

26 |     19.    At no time did Plaintiffs ever give permission to Defendants, or any of them, to use

27 | Plaintiffs' Rights in the Advertisements or otherwise to associate with, advertise, market, or

28 | promote Defendants' companies, products, or services, or for any other purpose. Plaintiffs have

1  not received any compensation for such unauthorized commercial use of Plaintiffs' Rights in the

2  Advertisements and otherwise to advertise, market, and promote Defendants' companies,

3  products, and services.

4      20.    Plaintiffs are informed and believe and based thereon allege that Defendants

5  intentionally, negligently, and/or knowingly used Plaintiffs' Rights in the Advertisements and

6  otherwise to advertise, market, and promote Defendants' companies, products, and services.

7      21.    Plaintiffs have developed and cultivated Plaintiffs' Rights to create universal

8  recognition and value.  Defendants have, without any right, title, or authorization, misappropriated

9  and infringed Plaintiffs' Rights for the aforementioned commercial purposes.

10  <u>**FIRST CAUSE OF ACTION**</u>

11    **(Misappropriation of Common Law Right of Publicity – Against All Defendants)**

12      22.    Plaintiffs repeat, re-allege, adopt, and incorporate each and every allegation

13  contained in paragraphs 1 through 21, as though fully set forth herein.

14      23.    The conduct of Defendants, as alleged hereinabove, constitutes a violation of

15  Plaintiffs' common law rights of publicity, due to unauthorized use of Plaintiffs' Rights for

16  Defendants' advantage.

17      24.    As a direct and proximate result of the aforesaid wrongful acts of Defendants, each

18  Plaintiff has been damaged in an amount to be determined according to proof at the time of trial.

19      25.    Plaintiffs are informed and believe and based thereon allege that Defendants, in

20  doing the things herein alleged, acted willfully, maliciously, and oppressively, and with full

21  knowledge of the adverse effects of their actions on Plaintiffs, and with willful and deliberate

22  disregard for the consequences to Plaintiffs.  By reason thereof, Plaintiffs are entitled to recover

23  punitive and exemplary damages from Defendants in an amount to be determined at the time of

24  trial.

25      26.    Plaintiffs also seek a preliminary and permanent injunction to prohibit Defendants

26  from any further use of Plaintiffs' Rights for Defendants' advantage.

27      //

28      //

-6-
COMPLAINT

## SECOND CAUSE OF ACTION

### (Violation of Common Law Right of Privacy – Against All Defendants)

27.   Plaintiffs repeat, re-allege, adopt, and incorporate each and every allegation contained in paragraphs 1 through 21, as though fully set forth herein.

28.   Defendants infringed Plaintiffs' right to be left alone and to control the use of their images, identities, and personas, by engaging in a knowing, unauthorized use of Plaintiffs' images, identities, and personas in direct violation of applicable privacy laws in California and Florida.

29.   As a direct and proximate result, Plaintiffs have suffered damages and are entitled to recover damages suffered as a result of Defendants' unlawful violation of Plaintiffs' privacy rights.

30.   Plaintiffs are entitled to an award of punitive damages against Defendants, to punish Defendants for their intentional, illegal conduct and to deter the same or similar conduct in the future.

31.   Plaintiffs also seek a preliminary and permanent injunction to prohibit Defendants from any further invasion of Plaintiffs' privacy rights.

## THIRD CAUSE OF ACTION

### (Trademark Infringement / False Association

### Lanham Act, 15 U.S.C. § 1125(a) – Against All Defendants)

32.   Plaintiffs repeat, re-allege, adopt, and incorporate each and every allegation contained in paragraphs 1 through 21, as though fully set forth herein.

33.   Plaintiffs' images and associated trademarks have been extensively advertised and promoted throughout the world for many years in connection with their respective entertainment, and related, services.  As a result of this advertising and promotion, Plaintiffs' images and associated trademarks are recognized throughout worldwide trading areas and channels of trade as famous and distinctive, and are identified by the purchasing public with Plaintiffs.  Plaintiffs' trademarks are famous and distinctive within the meaning of U.S. trademark law, including 15 U.S.C. sections 1125 and 1127.

//

-7-
COMPLAINT

- 114 -

34.     Defendants' use, and continuing use, in interstate commerce of Plaintiffs' Rights in connection with Defendants' companies, products, and services constitutes a violation of 15 U.S.C. section 1125(a), in that it creates a false association between Plaintiffs and Plaintiffs' Rights, and Defendants' companies, products, and services, and a false designation of origin as to the goods and services advertised, marketed, promoted, distributed, offered for sale, and sold by Defendants.  Defendants' use of Plaintiffs' Rights is likely to confuse, mislead, and/or deceive the consuming public and trade by creating the false impression that Defendants' companies, products, and services are or were approved, sponsored, endorsed, guaranteed by, and/or are in some way affiliated or associated with Plaintiffs.

35.     Defendants' use, and continuing use, in interstate commerce of Plaintiffs' Rights in connection with Defendants' companies, products, and services also constitutes a false or misleading description or representation in interstate commerce, in violation of 15 U.S.C. section 1125(a).

36.     As a direct and proximate result of the conduct of Defendants, Plaintiffs are entitled, pursuant to 15 U.S.C. section 1117(a), to the recovery of: (1) Defendants' profits from the sale of their products and services; (2) any damages sustained by each Plaintiff as a result of Defendants' conduct, which are in an amount to be determined according to proof at the time of trial; and (3) Plaintiffs' costs of suit.

37.     Plaintiffs are informed and believe and based thereon allege that because Defendants committed the acts alleged above with knowledge of Plaintiffs' prior rights to, and use of, Plaintiffs' Rights, and with the intent to trade on Plaintiffs' Rights, this case is exceptional under 15 U.S.C. section 1117(a), entitling Plaintiffs to treble damages, and also to the recovery of their attorneys' fees.

38.     Plaintiffs also seek a preliminary and permanent injunction to prohibit Defendants from any further commercial use of Plaintiffs' Rights.

//

//

//

-8-
COMPLAINT

- 115 -

## FOURTH CAUSE OF ACTION

### (Trade Dress Infringement

### Lanham Act, 15 U.S.C. § 1125(a) – Against All Defendants)

39.   Plaintiffs repeat, re-allege, adopt, and incorporate each and every allegation contained in paragraphs 1 through 21, as though fully set forth herein.

40.   Plaintiffs' images and associated trade dress have been extensively advertised and promoted throughout the world for many years in connection with their respective entertainment, and related, services.  As a result of this advertising and promotion, Plaintiffs' names and associated trade dress are recognized throughout worldwide trading areas and channels of trade as famous and distinctive, and are identified by the purchasing public with Plaintiffs.  Plaintiffs' images and trade dress are famous and distinctive within the meaning of U.S. trademark law, including 15 U.S.C. sections 1125 and 1127.

41.   Defendants' use, and continuing use, in interstate commerce of Plaintiffs' Rights in connection with Defendants' companies, products, and services constitutes a violation of 15 U.S.C. section 1125(a), in that it creates a false association between Plaintiffs and Plaintiffs' Rights, and Defendants' companies, products, and services, and a false designation of origin as to the goods and services advertised, marketed, promoted, distributed, offered for sale, and sold by Defendants.  Defendants' use of Plaintiffs' Rights is likely to confuse, mislead, and/or deceive the consuming public and trade by creating the false impression that Defendants' companies, products, and services are or were approved, sponsored, endorsed, guaranteed by, and/or are in some way affiliated or associated with Plaintiffs.

42.   Defendants' use, and continuing use, in interstate commerce of Plaintiffs' Rights in connection with Defendants' companies, products, and services also constitutes a false or misleading description or representation in interstate commerce, in violation of 15 U.S.C. section 1125(a).

43.   As a direct and proximate result of the conduct of Defendants, Plaintiffs are entitled, pursuant to 15 U.S.C. section 1117(a), to the recovery of:  (1) Defendants' profits from the sale of their products and services; (2) any damages sustained by each Plaintiff as a result of

-9-

COMPLAINT

1 | Defendants' conduct, which are in an amount to be determined according to proof at the time of

2 | trial; (3) statutory damages; and (4) Plaintiffs' costs of suit.

3 |     44.    Plaintiffs are informed and believe and based thereon alleges that because

4 | Defendants committed the acts alleged above with knowledge of Plaintiffs' prior rights to, and use

5 | of, Plaintiffs' Rights, and with the intent to trade on Plaintiffs' Rights, this case is exceptional

6 | under 15 U.S.C. section 1117(a), thereby entitling Plaintiffs to treble damages, and also to the

7 | recovery of their attorneys' fees.

8 |     45.    Plaintiffs also seek a preliminary and permanent injunction to prohibit Defendants

9 | from any further commercial use of Plaintiffs' Rights.

10 | **FIFTH CAUSE OF ACTION**

11 | **(Negligence – Against All Defendants)**

12 |     46.    Plaintiffs repeat, re-allege, adopt, and incorporate each and every allegation

13 | contained in paragraphs 1 through 21, as though fully set forth herein.

14 |     47.    At all times, and pursuant to applicable law, Defendants owed a duty to Plaintiffs

15 | not to use Plaintiffs' Rights in the Advertisements or otherwise to associate with, advertise,

16 | market, or promote Defendants' companies, products, and services.

17 |     48.    Defendants breached that duty by using Plaintiffs Rights in the Advertisements and

18 | otherwise to associate with, advertise, market, or promote Defendants' companies, products, and

19 | services.

20 |     49.    As a direct and proximate result of the aforesaid wrongful acts of Defendants, each

21 | Plaintiff has been damaged in an amount to be determined according to proof at the time of trial.

22 |     50.    Plaintiffs also seek a preliminary and permanent injunction to prohibit Defendants

23 | from any further commercial use of Plaintiffs' Rights.

24 |     WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, jointly

25 | and severally, as follows:

26 | AS TO THE FIRST CAUSE OF ACTION

27 |     1.    General and special damages in an amount to be determined according to proof at

28 | the time of trial, together with interest thereon at the maximum legal rate;

-10-
COMPLAINT

1       2.     Punitive damages in an amount according to proof at the time of trial;

2       3.     Preliminary and permanent injunction prohibiting Defendants and their affiliated

3   companies from any further commercial use of Plaintiffs' rights of publicity, including Plaintiffs'

4   names, photographs, likenesses, images, voices, and signatures.

5   **AS TO THE SECOND CAUSE OF ACTION**

6       1.     General and special damages in an amount to be determined according to proof at

7   the time of trial, together with interest thereon at the maximum legal rate;

8       2.     Punitive damages in an amount according to proof at the time of trial;

9       3.     Preliminary and permanent injunction prohibiting Defendants and their affiliated

10  companies from any further invasion of Plaintiff's rights of privacy, including the use of

11  Plaintiffs' names, photographs, likenesses, images, voices, sound-alike voices, signatures,

12  identities and personas for commercial purposes.

13  **AS TO THE THIRD AND FOURTH CAUSES OF ACTION**

14      1.     General and special damages in an amount to be determined according to proof at

15  the time of trial, together with interest thereon at the maximum legal rate;

16      2.     Statutory damages;

17      3.     Treble damages;

18      4.     An award of Plaintiffs' attorneys' fees;

19      5.     Preliminary and permanent injunction prohibiting Defendants and their affiliated

20  companies from any further commercial use of Plaintiffs' trademarks and trade dress including

21  without limitation Plaintiffs' names and images.

22  **AS TO THE FIFTH CAUSE OF ACTION**

23      1.     General and special damages in an amount to be determined according to proof at

24  the time of trial, together with interest thereon at the legal rate;

25      2.     Preliminary and permanent injunction prohibiting Defendants and their affiliated

26  companies from any further commercial use of Plaintiffs' rights of publicity and privacy,

27  including Plaintiffs' names, photographs, likenesses, images, voices, sound-alike voices,

28  signatures, identities and personas, and Plaintiffs' trademarks and trade dress.

1     AS TO ALL CAUSES OF ACTION

2         1.     For all costs of suit incurred herein; and

3         2.     For such other and further relief as the Court may deem to be just and proper.

4

5    Dated: March 28, 2013            HARDER MIRELL & ABRAMS LLP

6

7                        By: _____

8                           CHARLES J. HARDER

9                           Attorneys for Plaintiffs
                           BRADLEY COOPER and LIAM NEESON

10

11

12                     **DEMAND FOR JURY TRIAL**

13

14     Plaintiffs hereby demand a trial by jury.

15    Dated: March 28, 2013            HARDER MIRELL & ABRAMS LLP

16

17

18                     By: _____

19                         CHARLES J. HARDER
                        Attorneys for Plaintiffs

20                         BRADLEY COOPER and LIAM NEESON

21

22

23

24

25

26

27

28

**EXHIBIT J**

1  CHARLES J. HARDER (State Bar No. 184593)
2  DOUGLAS E. MIRELL (State Bar No. 94169)
   SARAH E. LUPPEN (State Bar No. 258559)
3  KIMBERLINA N. MCKINNEY (State Bar No. 286349)
   HARDER MIRELL & ABRAMS LLP
4  1801 Avenue of the Stars, Suite 1120
   Los Angeles, California 90067
5  Telephone:   (424) 203-1600
   Facsimile:   (424) 203-1601
6
7  Attorneys for Plaintiffs
   BRADLEY COOPER and LIAM
8  NEESON

9
                    UNITED STATES DISTRICT COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA
11

12  BRADLEY COOPER, an individual;        Case No. CV 13-02951 SJO (SHx)
13  and LIAM NEESON, an individual,

14         Plaintiffs,                     **STIPULATION FOR PROTECTIVE
                                           ORDER**
15         v.

16  VUTEC CORPORATION, a Florida
    corporation; FIRST IMPRESSIONS        Complaint Filed:      March 28, 2013
17  THEME THEATERS, INC., a Florida       Action Removed:       April 26, 2013
    corporation; and DOES 1-20, inclusive,
18                                         Trial Date:           April 29, 2014
           Defendants.
19

20              **STIPULATED PROTECTIVE ORDER**

21         It is hereby stipulated among plaintiffs BRADLEY COOPER and LIAM

22  NEESON (collectively, "Plaintiffs"), on the one hand, and Defendants VUTEC

23  CORPORATION and FIRST IMPRESSIONS THEME THEATERS, INC.

24  (collectively, "Defendants"), on the other hand, by and through their respective

25  counsel of record, that the following procedures, once ordered and entered by the

26  Court, shall govern the production of all documents, testimony, discovery responses,

27  and other information in the above-captioned action (the "Action"), including

28  information produced by Parties currently named or later joined in this Action and

                                -1-
                  STIPULATION FOR PROTECTIVE ORDER

1   all third parties subject to discovery herein.

2                   **GOOD CAUSE STATEMENT**

3       1.    The issues presented by the complaint and answer in this action will

4   most likely require an exchange of confidential business information, such as

5   product sales, revenue and profits, as well as celebrity valuation, all of which are

6   considered proprietary and confidential to the disclosing party, because public

7   dissemination of such could irreparably harm the disclosing party.

8                **PURPOSES AND LIMITATIONS**

9       2.    Because discovery in this Action is likely to involve the production of

10   certain confidential business information, such as product sales information,

11   financial information, including revenues and profits and celebrity valuations,

12   special protection from public disclosure and from use for any purpose other than

13   prosecuting this litigation is warranted. Accordingly, the Parties hereto stipulate to

14   and petition the Court to enter this Stipulated Protective Order (the "Protective

15   Order") pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 26(c) to

16   protect the above enumerated information against unauthorized disclosure and to

17   ensure that such information will be used only for purposes of this Action. The

18   Parties acknowledge that this Protective Order does not confer blanket protection on

19   all disclosures or responses to discovery, and the protection it affords extends only

20   to the information items listed above or elsewhere in this Protective Order. The

21   Parties further acknowledge that this Protective Order creates no entitlement to file

22   confidential information under seal; Civil Local Rule 79-5 for the United States

23   District Court, Central District of California sets forth the procedures that must be

24   followed and reflects the standards that will be applied when a party seeks

25   permission from the Court to file material under seal.

26                      **DEFINITIONS**

27       3.    The following terms, as used within this Protective Order are defined as

28   follows:

1       a.    <u>Action</u>:  means and refers to the above-captioned lawsuit entitled

2   *Bradley Cooper and Liam Neeson v. Vutec Corporation, et al.*, United States

3   District Court, Central District of California, Case No. 13-02951 SJO (SHx), all

4   actions now or later consolidated with the Action, and any appeal from the Action,

5   through final judgment;

6       b.    <u>Party or Parties</u>:  any party to this Action, including all of its

7   officers, directors, members, partners, employees, consultants, retained experts,

8   corporate affiliates, and outside counsel (and their support staff);

9       c.    <u>Disclosure or Discovery Material</u>:  all items or information,

10  regardless of the medium or manner generated, stored, or maintained (including,

11  among other things, testimony, transcripts, tangible things, writings and information,

12  whether in hard copy form, in electronically readable form, verbal, or otherwise)

13  that are produced or generated in disclosures or responses to discovery in this

14  Action;

15      d.    <u>"Confidential" Information or Items</u>:  all information (regardless

16  of how generated, stored, or maintained) or tangible things that qualify for

17  protection under standards developed under the Federal Rules of Civil Procedure.

18      e.    <u>Receiving Party</u>:  a Party that receives Disclosure or Discovery

19  Material from a Producing Party;

20      f.    <u>Producing Party</u>:  a Party or non-party that produces Disclosure

21  or Discovery Material in this Action;

22      g.    <u>Designating Party</u>:  a Party or non-party that designates

23  information or items that it produces in disclosures or in responses to discovery as

24  "Confidential;"

25      h.    <u>Protected Material</u>:  any Disclosure or Discovery Material that is

26  designated as "Confidential;"

27      i.    <u>Outside Counsel</u>:  attorneys who are not employees of a Party

28  but who are retained to represent or advise a Party in this Action;

-3-
STIPULATION FOR PROTECTIVE ORDER

1    j.    In-House Counsel:  all attorneys who are employees of a Party;

2    k.    Counsel:  Outside Counsel and In-House Counsel, including

3  their support staffs;

4    l.    Expert:  a person with specialized knowledge or experience in a

5  matter pertinent to the litigation who has been retained by a Party or its Counsel to

6  serve as an expert witness or as a consultant in this Action and who is not a past or a

7  current employee of a Party and who, at the time of retention, is not anticipated to

8  become an employee of a Party.  This definition includes a professional jury or trial

9  consultant retained in connection with this litigation.

10    m.    Professional Vendor(s):  persons or entities that provide litigation

11  support services (e.g., photocopying, videotaping, translating, preparing exhibits or

12  demonstrations, organizing, storing, retrieving data in any form or medium, etc.) and

13  their employees and subcontractors.

## SCOPE

14

15    4.    The protections conferred by this Protective Order cover not only

16  Protected Material, but also any information copied or extracted therefrom, as well

17  as all copies, excerpts, summaries, or compilations thereof, plus testimony,

18  conversations, or presentations by Parties or Counsel to or in Court or in other

19  settings that might reveal the substance of the Protected Material.

## DURATION

20

21    5.    Even after the termination of the Action, the confidentiality obligations

22  imposed by this Protective Order on the Parties shall remain in effect until a

23  Designating Party agrees otherwise, in writing, or a Court order otherwise directs.

## DESIGNATION OF PROTECTED MATERIAL

24

25    6.    Exercise of Restraint and Care in Designating Material for Protection.

26  Each Party or nonparty that designates information or items for protection under this

27  Protective Order must take care to limit any such designation to specific material

28  that qualifies under the appropriate standards.  A Designating Party must take care

-4-

STIPULATION FOR PROTECTIVE ORDER

1  to designate for protection only those parts of material, documents, items, or oral or
2  written communications that qualify so that other portions of the material,
3  documents, items, or communications for which protection is not warranted are not
4  swept unjustifiably within the ambit of this Protective Order.

5      7.   <u>Manner and Timing of Designations</u>.  Except as otherwise provided in
6  this Protective Order, or as otherwise stipulated or ordered, material that qualifies
7  for protection under this Protective Order must be clearly designated before the
8  material is disclosed or produced.  Designation in conformity with this Protective
9  Order requires:

10      a.   <u>For documents</u> (apart from transcripts of depositions or other
11  pretrial or trial proceedings):  The designation "Confidential" should be made in the
12  lower right hand corner of the document, or such other area of the document as to
13  avoid obscuring any original material.  To the extent that a Party produces a multi-
14  page document, the legend "Confidential" must be affixed to each page of the
15  document so designated.  A Party that makes original documents or materials
16  available for inspection need not designate them for protection until after the
17  inspecting Party has indicated which material it would like copied and produced.
18  During the inspection and before the designation, all of the material made available
19  for inspection shall be deemed "Confidential."  After the inspecting Party has
20  identified the documents it wants copied and produced, the producing Party must
21  determine which documents, or portions thereof, qualify for protection under this
22  Protective Order; then, before producing the specified documents, the producing
23  Party must affix the legend "Confidential" in the manner indicated above.

24      b.   <u>For discovery responses</u>, the designation "Confidential" should
25  be made on the caption page; the Protected Material should be segregated from the
26  remainder of the discovery responses and served separately.  If a Producing Party or
27  non-party agrees to make original documents or materials available for inspection,
28  that Producing Party or non-party need not designate those documents or materials

1  as Protected Material until after the inspecting Party has indicated which material it
2  would like copied and produced.  During the inspection and before the designation,
3  all of the material made available for inspection shall be deemed "Confidential."
4          c.   Testimony taken at a deposition, conference, hearing, or trial, as
5  well as exhibits used in connection with such testimony, may be designated as
6  "Confidential" by making a statement to that effect on the record at the deposition or
7  other proceeding.  Arrangements shall be made with the court reporter taking and
8  transcribing such proceeding to bind separately such portions of the transcript
9  containing information designated as Protected Material and to label such portions
10  with the appropriate designation.  When it is impractical to identify separately each
11  portion of testimony that is entitled to protection, and when it appears that
12  substantial portions of the testimony may qualify for protection, any Party and any
13  non-party that sponsors, offers, or gives the testimony may invoke on the record
14  before the deposition or proceeding is concluded a right to have up to thirty (30)
15  days from the date of receipt of a copy of the transcript to identify the specific
16  portions of the testimony as to which protection is sought.  Only those portions of
17  the testimony that are appropriately designated for protection within the thirty (30)
18  day period shall be covered by the provisions of this Protective Order.  A portion of
19  a deposition transcript containing Protected Material shall not be filed with the
20  Court unless submitted in accordance with the procedures set forth in paragraph 19
21  below.
22          d.   For information produced in some other form, and for any other
23  tangible items:  the Designating Party must affix in a prominent place on the exterior
24  of any container, canister, disk, CD, DVD, or other media or receptacle in which
25  Protected Material is kept or stored the legend "Confidential." If there is no place
26  upon which to put such legend, then the Designating Party must describe in writing
27  and in sufficient detail the Protected Material, indicate whether the Protected
28  Material is designated "Confidential" and provide this writing to all other Parties

1 | before or at the time production is made or, in the case of a production of Protected
2 | Material by a third party, within thirty (30) days of that production.
3 |   8.   <u>Inadvertent Failures To Designate</u>. An inadvertent failure to designate
4 | a Disclosure or Discovery Materials as Protected Material at the time of production
5 | may be remedied by supplemental written notice given by the Producing Party.
6 | Upon receipt of such notification, all documents, materials, or testimony so
7 | designated or re-designated shall be fully subject to this Protective Order as if it had
8 | been initially so designated; provided, however, that the Receiving Party shall incur
9 | no liability for any previous treatment of such information in conformance with its
10 | original designation.  The Party receiving such notice shall make a reasonable, good
11 | faith effort to insure that any analyses, memoranda, or notes which were internally
12 | generated based upon such information shall immediately be treated in conformance
13 | with any such designation or re-designation.
14 |   9.   <u>Inadvertent Production of Privileged Information</u>.  The inadvertent
15 | production of any privileged document or other information during discovery in this
16 | Action shall be without prejudice to any claim that such material is privileged under
17 | the attorney-client or other privilege, or protected from discovery as work product
18 | within the meaning of FRCP 26, and no Party or entity shall be held to have waived
19 | any rights by such inadvertent production.  In the case of inadvertent production, the
20 | Receiving Party, upon written request by the Producing Party, shall (i) return the
21 | original and all copies of such documents promptly upon receiving the request and
22 | in no event longer than five (5) business days, and (ii) shall not use such information
23 | for any purpose until further order of the Court.  Any analyses, memoranda, or notes
24 | which were internally generated based upon such information shall be destroyed.
25 | Nothing herein will restrict the Party from whom the return of the documents is
26 | requested from filing a motion with the Court contesting the designation of the
27 | material as privileged or protected by the work-product doctrine, from referring to
28 | the fact that the material had been produced, or from generally describing the

-7-
STIPULATION FOR PROTECTIVE ORDER

1   subject-matter being discussed in the document; provided, however, the Party filing

2   the motion cannot quote the document or disclose the content of the document, or

3   contend that any privilege has been waived by the inadvertent production.

## CHALLENGING CONFIDENTIALITY OBJECTIONS

5       10.   <u>Timing of Challenges</u>.  Unless a prompt challenge to a Designating

6   Party's confidentiality designation is necessary to avoid a foreseeable substantial

7   unfairness, unnecessary economic burden, or a later significant disruption or delay

8   of the litigation, a Party does not waive its right to challenge a confidentiality

9   designation by electing not to mount a challenge promptly after the original

10  designation is disclosed.

11      11.   <u>Meet and Confer</u>.  A Party that elects to initiate a challenge to a

12  Designating Party's confidentiality designation must do so in good faith and must

13  begin the process by giving written notice to the Designating Party and to all other

14  Parties in the Action.  In its notice, the Challenging Party must explain the basis for

15  its belief that the confidentiality designation is improper.  Within five (5) business

16  days of the date of the written challenge, the Designating Party must provide written

17  notice to the challenging Party that it will re-designate the Protected Material as

18  requested in the written challenge or that it will not and explain the basis for its

19  belief the confidentiality designation is proper.

20      12.   <u>Judicial Intervention</u>.  A Party that elects to pursue a challenge to a

21  confidentiality designation after considering Designating Party's explanation for the

22  basis of its belief that its confidentiality designation is proper may do so according

23  to the requirements of Civil Local Rule 37.  If the Joint Stipulation required under

24  Civil Local Rule 37 or portions of the Joint Stipulation are to be filed under seal,

25  good cause must be shown to the Court as to why the Joint Stipulation or portions

26  thereof should be filed under seal.  Pending the Court's ruling on the challenge, all

27  Parties shall continue to afford the material in question the level of protection to

28  which it is entitled under the Designating Party's designation.

**ACCESS TO AND USE OF PROTECTED MATERIAL**

13.    Except with the prior consent of the Designating Party or upon prior order of a court of competent jurisdiction, Protected Material shall not be disclosed except in accordance with the terms of this Protective Order.  A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation, including any appeals.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Protective Order.  Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Protective Order. When the Action has terminated, a Receiving Party must comply with the provisions of paragraph 21 below.

14.    Disclosure of "Confidential" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any Discovery Material or any other information or item designated as "Confidential" only to the following:

a.    the Receiving Party's Outside Counsel, as well as employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for purposes of this litigation, all of whom shall be deemed bound by the terms of this Protective Order;

b.    In-House Counsel of a Receiving Party to whom disclosure is reasonably necessary for the litigation;

c.    the officers, directors, members, partners (and their officers, directors, and employees), and employees of the Receiving Party to whom disclosure is reasonably necessary for purposes of this litigation;

d.    Professional representatives of the Receiving Party including agents, managers, business managers, insurers (along with their In-House and

-9-
STIPULATION FOR PROTECTIVE ORDER

1  Outside Counsel), and their staff to whom disclosure is reasonably necessary for

2  purposes of this litigation;

3          e.      Experts (as defined in this Protective Order) of the Receiving

4  Party to whom disclosure is reasonably necessary for purposes of this litigation and

5  who have signed the "Acknowledgement and Agreement to Be Bound by Protective

6  Order" that is attached hereto as Exhibit A;

7          f.      Accountants of the Receiving Party, as well as officers, directors,

8  employees and legal counsel of said accountants, to whom disclosure is reasonably

9  necessary for purposes of this litigation and who have signed the

10  "Acknowledgement and Agreement to Be Bound by Protective Order" that is

11  attached hereto as Exhibit A;

12          g.      Professional Vendors, including court reporters, copy services,

13  and their staffs, to whom disclosure is reasonably necessary for purposes of this

14  litigation;

15          h.      during their depositions, witnesses in the Action to whom

16  disclosure is reasonably necessary for purposes of this litigation, provided that

17  counsel questioning the witness has laid a foundation that the witness has or is

18  substantially likely to have knowledge of the subject matter of the Confidential

19  Information;

20          i.      the author of the document or the original source of the

21  information;

22          j.      witnesses who have already had access to the Confidential

23  Information through no violation of this Stipulation or the accompanying Protective

24  Order;

25          k.      the Court, its staff, jurors and potential jurors; and

26          l.      any settlement officer or mediator who may be ordered by the

27  Court or agreed to by the Parties to aid in the settlement of the Action, and the staff

28  of such settlement officer or mediator.

15. <u>Agreement to Be Bound By Protective Order</u>.

  a. Outside Counsel for each Party will be responsible for maintaining the originals of the "Acknowledgement and Agreement to Be Bound by Protective Order" until the conclusion of this Action, including any appeals.  At such time, Outside Counsel for each Party shall serve a copy of each such acknowledgment upon Outside Counsel for each other Party if requested by the other Party.  The Parties agree not to use these acknowledgments for any purpose other than monitoring and enforcing compliance with this Protective Order.

  b. Any person, other than the Court or the Court's staff, who receives Protected Material pursuant to paragraph 14 or 15 above, shall not disclose such information to any person who is not entitled to receive such information under this Protective Order.  In addition, any such person will only make such copies and summaries of the Protected Material as are essential to enable him or her to render the assistance required in connection with this litigation, and, upon his or her termination of work in connection with the Action, will return to the Outside Counsel who provided such Protected Materials to him or her all such copies of the Protected Materials and summaries thereof or destroy them.  Any such person shall not use the Protected Material, or any information contained therein, or derived therefrom, for business or competitive purposes, or for any purpose other than the prosecution or defense of this Action.

## DEPOSITION PROCEDURES

16. At any deposition session, when use of a document or the answer to a question is likely to result in the disclosure of Protected Material, Outside Counsel shall have the option, in lieu of taking other steps available under the FRCP, to request that all persons other than the reporter, Counsel, and individuals specified in paragraph 14 or 15 above leave the deposition room during the "Confidential" portion of the deposition.

## UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

17.    In the event that a Receiving Party is made aware of a breach or possible breach of this Protective Order, the Receiving Party shall provide to the Designating Party whatever information they have in their possession regarding the breach or possible breach such that the Designating Party will be placed in a position to address the problem.

## FILING PROTECTED MATERIAL

18.    Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action any Protected Material.  A Party that seeks to file any Protected Material under seal must comply with Civil Local Rule 79-5 for the United States District Court, Central District of California.  The application shall be directed to the Judge to whom the papers are directed.  Pending a ruling on the application, the Protected Material subject to the application to seal shall be lodged under seal.

## TRIAL PREPARATION AND TRIAL

19.    Outside Counsel for the Parties shall meet and confer prior to trial and attempt to develop guidelines regarding the use of "Confidential" Information or tangible items during the trial and any post-trial proceedings, and the pretrial conference order in this Action shall set forth the treatment at trial of "Confidential" documents, information or tangible items.  This Protective Order shall not extend to the trial proceedings.  However, aside from the trial proceedings, all individuals bound by the provisions of the Protective Order shall continue to be bound by the Protective Order until an order of the Court, or agreement of the Parties, relieves any individual(s) of those obligations.  Any Party, or all Parties, may apply to the Court for appropriate relief regarding the protection of Confidential Information during the trial.

## RETURN OF DISCOVERY MATERIAL

20.   All provisions of this Protective Order restricting the use of information obtained during discovery shall continue to be binding after the conclusion of this Action.  Upon final termination of the Action, including all appeals, each Party and is legal counsel and representatives shall destroy or assemble and return to each Designating Party all other documents, materials, and deposition transcripts designated by the Designating Party as "Confidential" and/or containing "Confidential" Information and all copies or summaries thereof.   Within thirty (30) days following the final termination of the Action, including all appeals, the Receiving Party or its Outside Counsel if requested by the other Party, shall submit a written certification to the Producing Party that all Protected Material was returned or destroyed and affirm that neither the Receiving Party nor its Outside Counsel has retained any copies, abstracts, compilations or summaries, or reproduced or captured the Protected Material in any other form or manner.  In the event that a dispute exists between a Party and its insurer following the final resolution of the Action, then the Designating Party will permit such Party a reasonable extension of time to comply with its obligations to return or destroy the "Confidential" Information and all copies or summaries thereof pursuant to this paragraph during the pendency of the dispute with the insurer and, upon the resolution of that dispute, the Party shall promptly comply with its obligations herein to return or destroy the "Confidential" Information and all copies or summaries thereof.

## FURTHER MOTIONS NOT PRECLUDED

21.   Entry of this Protective Order shall be without prejudice to any motion for relief from the provisions hereof or to any motion for further restriction on the production, exchange, or use of any Disclosure or Discovery Material or other information in the course of this Action; provided, however, that no such motion shall be made after the entry of a final judgment or settlement.

## MISCELLANEOUS

22.   No Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order.  Similarly, no Party waives any right to object on any ground to use in evidence any of the material covered by this Protective Order.

23.   The Court shall retain jurisdiction to enforce the terms of this Protective Order subsequent to entry of judgment or settlement of this Action.

24.   Pending the Court's approval of this Protective Order, the Parties shall abide by, and be subject to, the terms and conditions of this Protective Order.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD:

-14-
STIPULATION FOR PROTECTIVE ORDER

1  Dated:  July 1, 2013              HARDER MIRELL & ABRAMS LLP

2

3

4                                   By:  /s/ Charles J. Harder
                                         CHARLES J. HARDER
5                                        Attorneys for Plaintiffs
                                         BRADLEY COOPER and LIAM
6                                        NEESON
7

8  Dated:  July 1, 2013              LECLAIRRYAN LLP

9

10

11                                  By:  /s/ Brian C. Vanderhoof
                                         COURTNEY E. CURTIS
12                                       BRIAN C. VANDERHOOF
                                         Attorneys for Defendant
13                                       FIRST IMPRESSIONS THEME
                                         THEATERS, INC.
14

15                                  KINSELLA WEITZMAN ISER
16 Dated:  July 1, 2013              KUMP & ALDISERT LLP

17

18

19                                  By:  /s/ David W. Swift
                                         DAVID W. SWIFT
20                                       Attorneys for Defendant
                                         VUTEC CORPORATION
21

22

23

24

25

26

27

28

1                               **EXHIBIT A**

2        **ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

3       I, _____, of _____ at

4 _____ [print or type full address], have read in

5 its entirety and understand the Protective Order that was issued by the United States District Court

6 for the Central District of California in the case of *Bradley Cooper and Liam Neeson v. Vutec*

7 *Corporation, et al.*, United States District Court, Central District of California, Case No. 13-02951

8 SJO (SHx). I agree to comply with and to be bound by all the terms of this Protective Order and I

9 understand and acknowledge that failure to so comply could expose me to sanctions and

10 punishment in the nature of contempt. I agree that I will not disclose in any manner any

11 information or item that is subject to this Protective Order to any person or entity except in strict

12 compliance with the provisions of this Protective Order.

13       I further agree to submit to the jurisdiction of the United States District Court for the

14 Central District of California for the purpose of enforcing the terms of this Protective Order, even

15 if such enforcement proceedings occur after termination of this action.

16       I hereby appoint _____ of

17

18 _____at _____

19 _____ [print or type full address] as my California agent for service of

20 process in connection with this action or any proceedings related to enforcement of this Protective

21 Order.

22

23 Date: _____

24 City and State where signed: _____

25

26 Signature: _____

27 Printed name: _____

28

-16-

STIPULATION FOR PROTECTIVE ORDER

**Pierson, Toni A.**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Tuesday, July 02, 2013 9:33 AM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 2:13-cv-02951-SJO-SH Bradley Cooper et al v. Vutec Corporation et al Stipulation for Protective Order |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Harder, Charles on 7/2/2013 at 9:33 AM PDT and filed on 7/2/2013

| | |
|---|---|
| **Case Name:** | Bradley Cooper et al v. Vutec Corporation et al |
| **Case Number:** | 2:13-cv-02951-SJO-SH |
| **Filer:** | Bradley Cooper |
| | Liam Neeson |
| **Document Number:** | 28 |

**Docket Text:**
**Joint STIPULATION for Protective Order filed by Plaintiffs Bradley Cooper, Liam Neeson. (Attachments: # (1) Proposed Order on Stipulated Protective Order) (Harder, Charles)**

**2:13-cv-02951-SJO-SH Notice has been electronically mailed to:**

Charles J Harder    charder@HMAfirm.com, MOdell@hmafirm.com, SLuppen@hmafirm.com

Courtney E Curtis    courtney.curtis@leclairryan.com, ladonna.ellis@leclairryan.com, toni.pierson@leclairryan.com

David W Swift    dswift@kwikalaw.com, davidwswift@yahoo.com

Douglas E Mirell    dmirell@hmafirm.com

James C Potepan    james.potepan@leclairryan.com, ladonna.ellis@leclairryan.com, toni.pierson@leclairryan.com

Laura D Castner    lcastner@kwikalaw.com

7/3/2013

**2:13-cv-02951-SJO-SH Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\00016349.PDF
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/2/2013] [FileNumber=15858872-0]
[1f569cbfcdec5c90ae8bfec931d2c7131cb90f50f4d8ba399e58aebf07741aa0a80b
438ccae5e6d65c60dc66ca0713770529d5d95c11f779a80bb313ce6b1dd0]]
**Document description:**Proposed Order on Stipulated Protective Order
**Original filename:**C:\fakepath\00016350.PDF
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/2/2013] [FileNumber=15858872-1]
[891be2a98cdad11a249b12e85c78e1f848f8dc170341b0e20e37ae8f2c11140e5a32
5cca40df8a562be1b7b05e145908585558c76fdc8d40fb2b0b36b1996d5e]]

7/3/2013

**EXHIBIT K**

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11   BRADLEY COOPER, an individual;        Case No. CV 13-02951 SJO (SHx)
     and LIAM NEESON, an individual,
12                                          **ORDER ON STIPULATED**
                    Plaintiffs,             **PROTECTIVE ORDER**
13
              v.
14
     VUTEC CORPORATION, a Florida
15   corporation; FIRST IMPRESSIONS        Complaint Filed:      March 28, 2013
     THEME THEATERS, INC., a Florida       Action Removed:       April 26, 2013
16   corporation; and DOES 1–20, inclusive,
                                            Trial Date:          April 29, 2014
17                  Defendants.
18
19          Having considered the stipulation of plaintiffs BRADLEY COOPER and LIAM
20   NEESON and defendants VUTEC CORPORATION and FIRST IMPRESSIONS THEME
21   THEATERS, INC., by and through their counsel, regarding their proposed stipulated
22   protective order, the terms of such stipulated protective order are approved, it is deemed an
23   order of this Court and IT IS SO ORDERED.
24
25   Dated: July 02, 2013
26                                          _____
                                            United States Magistrate Judge
27
28

ORDER ON STIPULATED PROTECTIVE ORDER

- 138 -

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 13-02951 SJO (SHx) | Date | June 10, 2013 |
| Title | Bradley Cooper et al v. Vutec Corporation et al | | |

Present: The Honorable     S. JAMES OTERO

| Victor Paul Cruz | Margarita Ramirez | |
|---|---|---|
| Deputy Clerk | Court Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Douglas E. Mirell          David W. Swift
Courtney E. Curtis

Proceedings:     SCHEDULING CONFERENCE

Hearing held.  The Court sets the following schedule:

Jury Trial:           Tuesday, April 29, 2014 @ 9:00 a.m.

Pretrial Conference:     Monday, April 21, 2014 @ 9:00 a.m.

Motion Cutoff:       Monday, March 3, 2014 @ 10:00 a.m.

Discovery Cutoff:     Wednesday, January 29, 2014

Last Date to Amend:     Wednesday, July 10, 2013

Reference of the above case to the Alternative Dispute Resolution Pilot Program, General Order 02-07, is vacated.  Settlement referred to the calendar of Magistrate Judge Hillman for all further proceedings.

All discovery disputes are to be brought before the Magistrate Judge assigned to the case. The parties are reminded of their obligations under Fed. R. Civ. P. 26-1(a) to disclose information without a discovery request.

Court advises counsel that all Pretrial documents must be filed in compliance with the Court's standing order, including but not limited to:
1.  All Jury Instructions, agreed and opposed;
2.  Verdict Forms;

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-02951 SJO (SHx) | Date | June 10, 2013 |
|---|---|---|---|
| Title | Bradley Cooper et al v. Vutec Corporation et al | | |

3.    Proposed Voir Dire Questions;

4.    Agreed-To Statement of Case;

5.    Witness List, listing each witness and time estimates to conduct direct, cross, redirect and recross;

6.    Trial Brief and Memorandum of Contentions;

7.    Joint Rule 26(f) Report;

8.    If Court Trial, file Findings of Fact and Conclusions of Law and summaries of direct testimony at Pretrial Conference;

9.    Motions in Limine are to be filed according to Local Rule 7 and will be heard at 9:00 a.m. the first day of trial;

10.    Exhibits properly labeled, tagged, and in binders.

|  | : | 0/11 |
|---|---|---|
| Initials of Preparer | | vpc |

**EXHIBIT  L**

1   HARDER MIRELL & ABRAMS LLP
    CHARLES J. HARDER (State Bar No. 184593)
2   DOUGLAS E. MIRELL (State Bar No. 94169)
    SARAH E. LUPPEN (State Bar No. 258559)
3   KIMBERLINA N. MCKINNEY (State Bar No. 286349)
    1801 Avenue of the Stars, Suite 1120
4   Los Angeles, CA  90067
    Telephone:    (424) 203-1600
5   Facsimile:    (424) 203-1601
    Email:        CHarder@HMAfirm.com
6
    Attorneys for Plaintiffs
7   BRADLEY COOPER and LIAM NEESON

8                        UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  BRADLEY COOPER, an individual; and     Case No. CV 13-2951 SJO (SHx)
    LIAM NEESON, an individual,
12                                          PLAINTIFF LIAM NEESON'S
                Plaintiffs,                 RESPONSES TO INTERROGATORIES
13                                          (SET ONE) PROPOUNDED BY
          vs.                               DEFENDANT FIRST IMPRESSIONS
14                                          THEME THEATERS, INC.
    VUTEC CORPORATION, a Florida
15  Corporation; FIRST IMPRESSIONS THEME
    THEATERS, INC., a Florida corporation; and
16  DOES 1-20, inclusive,

17              Defendants.

18
    VUTEC CORPORATION, a Florida
19  Corporation,

20              Cross-Complainant,

21        vs.

22  FIRST IMPRESSIONS THEME THEATERS,
    INC., a Florida corporation.
23
                Cross-Defendant.
24

25  PROPOUNDING PARTY:        Defendant FIRST IMPRESSIONS THEME
                              THEATRES, INC.
26
    RESPONDING PARTY:         Plaintiff LIAM NEESON
27
    SET NO.:                  ONE
28

                                    1
    PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

1    Plaintiff LIAM NEESON (herein "Responding Party") hereby responds to Interrogatories

2    (Set One) propounded by defendant FIRST IMPRESSIONS THEME THEATERS, INC. (herein

3    "Propounding Party") as follows:

4                              **PRELIMINARY STATEMENT**

5         Responding Party responds to the Interrogatories subject to, without intending to waive,

6    and expressly preserving: (a) any objections as to the competency, relevance, materiality,

7    privilege or admissibility of any of the responses or any of the documents identified in any

8    response hereto; and (b) the right at any time to revise, correct, supplement or clarify any of the

9    responses herein.

10        These responses are based upon a diligent investigation undertaken by Responding Party

11   and its counsel since the service of these Interrogatories.  These responses reflect only

12   Responding Party's current understanding, belief and knowledge regarding the matters about

13   which inquiry was made.  Responding Party has not yet had sufficient opportunity to depose or

14   interview all persons who may have knowledge of relevant facts, or to discover or otherwise

15   obtain and review all documents which may have some bearing on this case.

16        Consequently, there may exist further information, documents and persons with

17   knowledge relevant to these Interrogatories of which Responding Party is not currently aware.

18   As this action proceeds, Responding Party anticipates that further facts, witnesses and documents

19   may be discovered or identified.  Without in any way obligating it to do so, Responding Party

20   reserves the right to offer further or different evidence or information at trial or at any pretrial

21   proceeding.  These responses are not in any way to be deemed an admission or representation

22   that there are no further facts, documents or witnesses having knowledge relevant to the subject

23   matter of these Interrogatories.

24                              **GENERAL OBJECTIONS**

25        1.    The following Responses, and each of them, are based upon information and

26   writings presently available to, and located by, Responding Party and its attorneys.  Responding

27   Party has not completed an investigation of the facts or discovery proceedings in this case and

28   has not completed its preparation for trial.  The following Responses, and each of them, are made

2

without prejudice to Responding Party's right to produce evidence based on subsequently discovered facts or documents, and to offer such facts or documents in evidence at the time of trial. The fact that Responding Party has responded to a Request should not be taken as an admission that Responding Party accepts or admits the existence of any facts set forth or assumed by such Request, or that such Response constitutes admissible evidence. The following Responses, and each of them, are made without prejudice to the rights of Responding Party to introduce evidence of any subsequently discovered facts or documents which Responding Party may later obtain, discover or recall.

2.      The documents and information which could or would form the basis of responses to the instant Request for Production, in whole or in part, are still in the process of being identified by Responding Party, and all such relevant documents have not yet been identified, examined or produced. In addition, the significance of documents which may now be in the possession of Responding Party may only become apparent upon further discovery and review of those documents in the context of other documents which have not yet been identified or obtained in the context of later testimony or discovery which may establish their relevance.

3.      These Responses are made, and any and all documents are being produced, solely for the purposes of this litigation. Any documents supplied in response to the Requests are being supplied by Responding Party subject to all objections as to competence, relevance, materiality, propriety and admissibility, and to any and all other objections on any ground that would require the exclusion of any document or portion thereof, if such document were offered in evidence in Court, all of which objections and grounds are expressly reserved and may be interposed at the time of trial.

4.      Responding Party, accordingly, reserves the right to alter or modify any and all Responses set forth herein as additional facts may be ascertained, documents discovered, analyses made, witnesses identified, additional parties identified, legal research completed, and contentions made or expanded.

5.      Responding Party objects to the definitions in the Requests for Production of Documents to the extent that they seek to impose upon Responding Party obligations not

3

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

- 143 -

1    imposed, or beyond those imposed, by the Federal Rules of Civil Procedure ("Fed. R. Civ. P.")

2    or the Local Rules of the United States District Court for the Central District of California.

3        6.     Responding Party objects to the definition of the terms "NEESON," "YOU," and

4    "YOUR," to the extent that the definition purports to extend to any person or entity other than

5    Liam Neeson, and to persons and entities not subject to Responding Party's control.  Such

6    definition is beyond the scope of discovery permitted by Fed. R. Civ. P. 34, and is overbroad,

7    oppressive, unduly burdensome, and harassing.  Accordingly, the following responses are limited

8    to Liam Neeson, unless otherwise indicated in the response.

9        7.     Responding Party objects generally to each and every Request to the extent it

10   calls for information that is protected by the attorney-client privilege and/or the attorney work-

11   product privilege.

12       8.     Responding Party objects generally to each and every Request to the extent it

13   purports to deviate from or expand upon a litigant's discovery rights under the Fed. R. Civ. P.,

14   Federal Rules of Evidence, or other statutory or case law governing requests to produce

15   documents and things.

16       9.     Responding Party objects generally to each and every Request to the extent it

17   requests any information concerning the content of conversations of any other party to this action

18   or documents in the possession of any other party to this action, other than the Responding Party,

19   in that such information is equally accessible to all parties.

20       10.    Responding Party objects to producing any private and/or confidential business or

21   proprietary information or trade secrets.

22       11.    Responding Party objects to the definition of the word "documents" to the extent

23   that Propounding Party seek documents not in Responding Party's possession, custody or

24   control.

25       12.    Responding Party objects to these Requests, and each of them, to the extent they

26   are not limited to the subject matter of this action and thus are irrelevant, immaterial and not

27   reasonably calculated to lead to the discovery of admissible evidence.

28       13.    Responding Party objects to these Requests, and each of them, to the extent they

4

1  are unduly burdensome, oppressive, unreasonably cumulative, duplicative and overbroad.

2      14.     Responding Party objects to these Requests, and each of them, to the extent they

3  seek information to which Propounding Party has equal access.

4                    **RESPONSES TO INTERROGATORIES**

5      The Preliminary Statement and General Objections are incorporated into each response

6  below, regardless of whether specifically mentioned.  The specific objections set forth below are

7  not a waiver, in whole or in part, of any of the foregoing General Objections.  Subject to and

8  without waiver of these objections, Liam Neeson responds below.

9  **INTERROGATORY NO. 1:**

10     Identify and describe each and every use of NEESON'S INTELLECTUAL PROPERTY

11  by DEFENDANTS that YOU contend in this ACTION was unauthorized.

12  **RESPONSE TO INTERROGATORY NO. 1:**

13     Responding Party incorporates by this reference each and every general objection as

14  though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

15  seeks information protected from disclosure by the attorney-client privilege and/or attorney

16  work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

17  requested information is not identified with reasonable particularity.  Responding Party objects

18  to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

19  harassing.  Responding Party objects to this Interrogatory to the extent that it calls for a legal

20  conclusion.  Responding Party objects to this Interrogatory to the extent that it prematurely calls

21  for expert opinion and analysis in violation of California Code of Civil Procedure section 2034

22  and *Nacht & Lewis Architects, Inc. v. Superior Court*, 47 Cal. App. 4th 214 (1996).

23     Subject to and without waiving the foregoing objections, Responding Party Responds as

24  follows: Defendants used Responding Party's photograph, likeness, image and identity, without

25  permission, in Defendants' advertisements, marketing and promotion for the sale of commercial

26  products and services.  Responding Party also refers to the advertisements at issue produced by

27  the parties in discovery.

28  ///

5

**INTERROGATORY NO. 2:**

IDENTIFY all PERSONS who own any copyrights in connection with The A-Team film (2010).

**RESPONSE TO INTERROGATORY NO. 2:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein. Responding Party objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine. Responding Party objects to this Interrogatory on the ground that the requested information is not identified with reasonable particularity. Responding Party objects to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and harassing. Responding Party objects to this Interrogatory on the grounds that it is so broad on its face that it requires production of irrelevant information. Responding Party objects to this Interrogatory to the extent that the information requested is equally known to Propounding Party.

Subject to and without waiving the foregoing objections, Responding Party responds as follows: Responding Party is presently unaware of the requested information. Investigation and discovery are continuing and Responding Party reserves its right to amend and/or supplement its response hereto.

**INTERROGATORY NO. 3:**

IDENTIFY all PERSONS who own the copyright in the movie still from The A-Team film depicting PLAINTIFFS, as referenced in paragraph 2 of YOUR complaint in this ACTION.

**RESPONSE TO INTERROGATORY NO. 3:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein. Responding Party objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine. Responding Party objects to this Interrogatory on the ground that the requested information is not identified with reasonable particularity. Responding Party objects to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and harassing. Responding Party objects to this Interrogatory on the grounds that it is so broad on its

1  face that it requires production of irrelevant information.  Responding Party objects to this

2  Interrogatory to the extent that the information requested is equally known to Propounding Party.

3      Subject to and without waiving the foregoing objections, Responding Party responds as

4  follows: Responding Party is presently unaware of the requested information.  Investigation and

5  discovery are continuing and Responding Party reserves its right to amend and/or supplement its

6  response hereto.

7  **INTERROGATORY NO. 4:**

8      State the PERSON who first discovered the DEFENDANTS' use of NEESON'S

9  INTELLECTUAL PROPERTY that YOU contend in this ACTION was unauthorized, and the

10  date of such discovery.

11  **RESPONSE TO INTERROGATORY NO. 4:**

12      Responding Party incorporates by this reference each and every general objection as

13  though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

14  seeks information protected from disclosure by the attorney-client privilege and/or attorney

15  work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

16  requested information is not identified with reasonable particularity.  Responding Party objects

17  to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

18  harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its

19  face that it requires production of irrelevant information.

20      Subject to and without waiving the foregoing objections, Responding Party responds as

21  follows: Defendants, in or about March 2011.  Plaintiffs and their legal/business representatives

22  learned of the unauthorized use of rights by Defendants in or about February 2013.

23  **INTERROGATORY NO. 5:**

24      State the date upon which NEESON first became aware of the DEFENDANTS' use of

25  NEESON'S INTELLECTUAL PROPERTY that YOU contend in this ACTION was

26  unauthorized.

27  **RESPONSE TO INTERROGATORY NO. 5:**

28      Responding Party incorporates by this reference each and every general objection as

7

1  though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

2  seeks information protected from disclosure by the attorney-client privilege and/or attorney

3  work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

4  requested information is not identified with reasonable particularity.  Responding Party objects

5  to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

6  harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its

7  face that it requires production of irrelevant information.

8      Subject to and without waiving the foregoing objections, Responding Party responds as

9  follows: in or about February 2013.

10  **INTERROGATORY NO. 6:**

11      Identify and describe each advertisement that YOU contend in this ACTION was an

12  advertisement published by FIRST IMPRESSIONS without authorization.

13  **RESPONSE TO INTERROGATORY NO. 6:**

14      Responding Party incorporates by this reference each and every general objection as

15  though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

16  seeks information protected from disclosure by the attorney-client privilege and/or attorney

17  work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

18  requested information is not identified with reasonable particularity.  Responding Party objects

19  to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

20  harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its

21  face that it requires production of irrelevant information.

22      Subject to and without waiving the foregoing objections, Responding Party responds as

23  follows: Responding Party refers First Impressions Theme Theaters, Inc. to the advertisements at

24  issue produced by the parties in discovery.

25  **INTERROGATORY NO. 7:**

26      Identify and describe each advertisement that YOU contend in this ACTION was an

27  advertisement published by Defendant Vutec Corporation without authorization.

28  ///

8

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

**RESPONSE TO INTERROGATORY NO. 7:**

1  
2  Responding Party incorporates by this reference each and every general objection as
3  though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it
4  seeks information protected from disclosure by the attorney-client privilege and/or attorney
5  work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the
6  requested information is not identified with reasonable particularity.  Responding Party objects
7  to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and
8  harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its
9  face that it requires production of irrelevant information.
10  Subject to and without waiving the foregoing objections, Responding Party responds as
11  follows: Responding Party refers First Impressions Theme Theaters, Inc. to the advertisements at
12  issue produced by the parties in discovery.

13  **INTERROGATORY NO. 8:**

14  State the dollar amount in licensing fees and/or royalties that YOU contend FIRST
15  IMPRESSIONS would have had to pay YOU for use of NEESON'S INTELLECTUAL
16  PROPERTY to the same extent and in the same manner in which it was used in the
17  advertisements at issue in this ACTION.

18  **RESPONSE TO INTERROGATORY NO. 8:**

19  Responding Party incorporates by this reference each and every general objection as
20  though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it
21  seeks information protected from disclosure by the attorney-client privilege and/or attorney
22  work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the
23  requested information is not identified with reasonable particularity.  Responding Party objects
24  to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and
25  harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its
26  face that it requires production of irrelevant information.  Responding Party objects to this
27  Interrogatory to the extent that it prematurely calls for expert opinion and analysis in violation of
28  California Code of Civil Procedure section 2034 and *Nacht & Lewis Architects, Inc. v. Superior*

9

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

1 | *Court*, 47 Cal. App. 4th 214 (1996).

2 |      Subject to and without waiving the foregoing objections, Responding Party responds as

3 | follows:  As a result of Defendants' actions, Responding Party has suffered general damages as

4 | calculated by the market value of his photograph, likeness, image, and identity used in a series of

5 | advertisements throughout the United States, among other territories, for commercial products.

6 | *See, e.g., Bette Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) ("[w]hat [Ford]

7 | sought was an attribute of Midler's identity.  Its value was what the market would have paid for

8 | Midler to have sung the commercial in person.")  The market value of Responding Party's

9 | photograph, likeness, image, and identity in commercial advertising throughout the United

10 | States, among other territories, for commercial products is several million dollars.

11 |      Liam Neeson is a universally recognized, highly regarded, critically acclaimed, and

12 | commercially valuable motion picture actor.

13 |      Mr. Neeson has starred in the following motion pictures, among many others:  Taken 2,

14 | The Dark Knight Rises, Battleship, Wrath of the Titans, The Grey, Unknown, The Chronicles of

15 | Narnia: The Voyage of the Dawn Treader, The Next Three Days, The A-Team, Clash of the

16 | Titans, After.Life, Chloe, Five Minutes of Heaven, The Other Man, Ponyo, The Chronicles of

17 | Narnia: Prince Caspian, Taken, Seraphim Falls, The Chronicles of Narnia: The Lion, the Witch

18 | and the Wardrobe, Breakfast on Pluto, Batman Begins, Kingdom of Heaven, Kinsey, Love

19 | Actually, Gangs of New York, K-19: The Widowmaker, Gun Shy, The Haunting, Star Wars:

20 | Episode I – The Phantom Menace, Les Miserables, Michael Collins, Before and After, Rob Roy,

21 | Nell, Schindler's List, Ruby Cairo, Ethan Frome, Leap of Faith, Husbands and Wives, Shining

22 | Through, Under Suspicion, Crossing the Line, Darkman, Next of Kin, High Spirits, The Good

23 | Mother, The Dead Pool, Satisfaction, Suspect, A Prayer for the Dying, Duet for One, The

24 | Mission, Lamb, The Innocent, The Bounty, Krull, and Excalibur.

25 |      Mr. Neeson has been nominated for more than thirty (30) acting awards, and has won

26 | many of them.  His nominations have included the Academy Award Oscar® and the Golden

27 | Globe for Best Actor for his performance in *Schindler's List* (1994); two other Golden Globe

28 | Best Actor nominations for *Kinsey* and *Michael Collins*, respectively; and a nomination for the

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

1   2013 People's Choice Award for Best Dramatic Movie Actor.  Mr. Neeson has won the

2   following acting awards, among many others:

3       British Independent Film Award, 2010

4       Chicago Film Critics Association Award, Best Actor for *Schindler's List*, 1993

5       Cognac Film Festival, Best Actor for *Under Suspicion*, 1991

6       Evening Standard British Film Award, Best Actor for *Michael Collins*, 1996

7       Irish Film and Television Award, Best Actor for *Kinsey*, 2004

8       Los Angeles Film Critics Association Award, Best Actor for *Kinsey*, 2004

9       Palm Springs International Film Festival, Achievement Award, 2005

10      Taorimina International Film Festival Award, 2000

11      Venice Film Festival, Best Actor for *Michael Collins*, 1996

12      Responding Party has produced relevant, non-privileged documents on the issues

13  discussed above, and also will present expert witness testimony at trial regarding the method of

14  calculation and basis for such damages.

15  **INTERROGATORY NO. 9:**

16      IDENTIFY all PERSONS from whom YOU contend FIRST IMPRESSIONS would have

17  to seek permission or authorization from to obtain a license to use the movie still image from

18  The A-Team film (2010) that is at issue in this ACTION.

19  **RESPONSE TO INTERROGATORY NO. 9:**

20      Responding Party incorporates by this reference each and every general objection as

21  though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

22  seeks information protected from disclosure by the attorney-client privilege and/or attorney

23  work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

24  requested information is not identified with reasonable particularity.  Responding Party objects

25  to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

26  harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its

27  face that it requires production of irrelevant information.  Responding Party objects to this

28  Interrogatory to the extent that the information requested is equally known to Propounding Party.

11

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

- 151 -

Subject to and without waiving the foregoing objections, Responding Party responds as follows: If the image of Responding Party, then Responding Party must approve the commercial use of the image.  Responding Party is not aware of all other rights owners of the film. Investigation and discovery are continuing and Responding Party reserves its right to amend and/or supplement its response hereto.

**INTERROGATORY NO. 10:**

State the dollar amount of fees, revenue, royalties, and any other income YOU contend YOU have lost as a result of DEFENDANTS' use of NEESON'S INTELLECTUAL PROPERTY that YOU contend in this ACTION was unauthorized.

**RESPONSE TO INTERROGATORY NO. 10:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the requested information is not identified with reasonable particularity.  Responding Party objects to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its face that it requires production of irrelevant information.  Responding Party objects to this Interrogatory to the extent that it prematurely calls for expert opinion and analysis in violation of California Code of Civil Procedure section 2034 and *Nacht & Lewis Architects, Inc. v. Superior Court*, 47 Cal. App. 4th 214 (1996).

Subject to and without waiving the foregoing objections, Responding Party responds as follows:  As a result of Defendants' actions, Responding Party has suffered general damages as calculated by the market value of his photograph, likeness, image, and identity used in a series of advertisements throughout the United States, among other territories, for commercial products. *See, e.g., Bette Midler v. Ford Motor Co.,* 849 F.2d 460, 463 (9th Cir. 1988) ("[w]hat [Ford] sought was an attribute of Midler's identity.  Its value was what the market would have paid for Midler to have sung the commercial in person.")  The market value of Responding Party's

12

1  photograph, likeness, image, and identity in commercial advertising throughout the United

2  States, among other territories, for commercial products is several million dollars.

3      Liam Neeson is a universally recognized, highly regarded, critically acclaimed, and

4  commercially valuable motion picture actor.

5      Mr. Neeson has starred in the following motion pictures, among many others:  Taken 2,

6  The Dark Knight Rises, Battleship, Wrath of the Titans, The Grey, Unknown, The Chronicles of

7  Narnia: The Voyage of the Dawn Treader, The Next Three Days, The A-Team, Clash of the

8  Titans, After.Life, Chloe, Five Minutes of Heaven, The Other Man, Ponyo, The Chronicles of

9  Narnia: Prince Caspian, Taken, Seraphim Falls, The Chronicles of Narnia: The Lion, the Witch

10  and the Wardrobe, Breakfast on Pluto, Batman Begins, Kingdom of Heaven, Kinsey, Love

11  Actually, Gangs of New York, K-19: The Widowmaker, Gun Shy, The Haunting, Star Wars:

12  Episode I – The Phantom Menace, Les Miserables, Michael Collins, Before and After, Rob Roy,

13  Nell, Schindler's List, Ruby Cairo, Ethan Frome, Leap of Faith, Husbands and Wives, Shining

14  Through, Under Suspicion, Crossing the Line, Darkman, Next of Kin, High Spirits, The Good

15  Mother, The Dead Pool, Satisfaction, Suspect, A Prayer for the Dying, Duet for One, The

16  Mission, Lamb, The Innocent, The Bounty, Krull, and Excalibur.

17      Mr. Neeson has been nominated for more than thirty (30) acting awards, and has won

18  many of them.  His nominations have included the Academy Award Oscar® and the Golden

19  Globe for Best Actor for his performance in *Schindler's List* (1994); two other Golden Globe

20  Best Actor nominations for *Kinsey* and *Michael Collins*, respectively; and a nomination for the

21  2013 People's Choice Award for Best Dramatic Movie Actor.  Mr. Neeson has won the

22  following acting awards, among many others:

23      British Independent Film Award, 2010

24      Chicago Film Critics Association Award, Best Actor for *Schindler's List*, 1993

25      Cognac Film Festival, Best Actor for *Under Suspicion*, 1991

26      Evening Standard British Film Award, Best Actor for *Michael Collins*, 1996

27      Irish Film and Television Award, Best Actor for *Kinsey*, 2004

28      Los Angeles Film Critics Association Award, Best Actor for *Kinsey*, 2004

13

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

1     Palm Springs International Film Festival, Achievement Award, 2005

2     Taorimina International Film Festival Award, 2000

3     Venice Film Festival, Best Actor for *Michael Collins*, 1996

4     Responding Party has produced relevant, non-privileged documents on the issues

5 discussed above, and also will present expert witness testimony at trial regarding the method of

6 calculation and basis for such damages.

7 **INTERROGATORY NO. 11:**

8     State the dollar amount of fees, revenue, royalties, and any other income YOU contend

9 YOU have lost as a result of FIRST IMPRESSIONS' use of NEESON'S INTELLECTUAL

10 PROPERTY that YOU contend in this ACTION was unauthorized.

11 **RESPONSE TO INTERROGATORY NO. 11:**

12     Responding Party incorporates by this reference each and every general objection as

13 though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

14 seeks information protected from disclosure by the attorney-client privilege and/or attorney

15 work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

16 requested information is not identified with reasonable particularity.  Responding Party objects

17 to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

18 harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its

19 face that it requires production of irrelevant information.  Responding Party objects to this

20 Interrogatory to the extent that it prematurely calls for expert opinion and analysis in violation of

21 California Code of Civil Procedure section 2034 and *Nacht & Lewis Architects, Inc. v. Superior*

22 *Court*, 47 Cal. App. 4th 214 (1996).

23     Subject to and without waiving the foregoing objections, Responding Party responds as

24 follows:  As a result of Defendants' actions, Responding Party has suffered general damages as

25 calculated by the market value of his photograph, likeness, image, and identity used in a series of

26 advertisements throughout the United States, among other territories, for commercial products.

27 *See, e.g., Bette Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) ("[w]hat [Ford]

28 sought was an attribute of Midler's identity.  Its value was what the market would have paid for

14

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

1  Midler to have sung the commercial in person.")  The market value of Responding Party's
2  photograph, likeness, image, and identity in commercial advertising throughout the United
3  States, among other territories, for commercial products is several million dollars.
4       Liam Neeson is a universally recognized, highly regarded, critically acclaimed, and
5  commercially valuable motion picture actor.
6       Mr. Neeson has starred in the following motion pictures, among many others:  Taken 2,
7  The Dark Knight Rises, Battleship, Wrath of the Titans, The Grey, Unknown, The Chronicles of
8  Narnia: The Voyage of the Dawn Treader, The Next Three Days, The A-Team, Clash of the
9  Titans, After.Life, Chloe, Five Minutes of Heaven, The Other Man, Ponyo, The Chronicles of
10 Narnia: Prince Caspian, Taken, Seraphim Falls, The Chronicles of Narnia: The Lion, the Witch
11 and the Wardrobe, Breakfast on Pluto, Batman Begins, Kingdom of Heaven, Kinsey, Love
12 Actually, Gangs of New York, K-19: The Widowmaker, Gun Shy, The Haunting, Star Wars:
13 Episode I – The Phantom Menace, Les Miserables, Michael Collins, Before and After, Rob Roy,
14 Nell, Schindler's List, Ruby Cairo, Ethan Frome, Leap of Faith, Husbands and Wives, Shining
15 Through, Under Suspicion, Crossing the Line, Darkman, Next of Kin, High Spirits, The Good
16 Mother, The Dead Pool, Satisfaction, Suspect, A Prayer for the Dying, Duet for One, The
17 Mission, Lamb, The Innocent, The Bounty, Krull, and Excalibur.
18      Mr. Neeson has been nominated for more than thirty (30) acting awards, and has won
19 many of them.  His nominations have included the Academy Award Oscar® and the Golden
20 Globe for Best Actor for his performance in Schindler's List (1994); two other Golden Globe
21 Best Actor nominations for Kinsey and Michael Collins, respectively; and a nomination for the
22 2013 People's Choice Award for Best Dramatic Movie Actor.  Mr. Neeson has won the
23 following acting awards, among many others:
24      British Independent Film Award, 2010
25      Chicago Film Critics Association Award, Best Actor for Schindler's List, 1993
26      Cognac Film Festival, Best Actor for Under Suspicion, 1991
27      Evening Standard British Film Award, Best Actor for Michael Collins, 1996
28      Irish Film and Television Award, Best Actor for Kinsey, 2004

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

1    Los Angeles Film Critics Association Award, Best Actor for *Kinsey*, 2004

2    Palm Springs International Film Festival, Achievement Award, 2005

3    Taorimina International Film Festival Award, 2000

4    Venice Film Festival, Best Actor for *Michael Collins*, 1996

5        Responding Party has produced relevant, non-privileged documents on the issues

6    discussed above, and also will present expert witness testimony at trial regarding the method of

7    calculation and basis for such damages.

8    **INTERROGATORY NO. 12:**

9        IDENTIFY all of NEESON'S talent agents, outside counsel, and business managers,

10   including publicity managers.

11   **RESPONSE TO INTERROGATORY NO. 12:**

12       Responding Party incorporates by this reference each and every general objection as

13   though fully set forth herein. Responding Party objects to this Interrogatory to the extent that it

14   seeks information protected from disclosure by the attorney-client privilege and/or attorney

15   work-product doctrine. Responding Party objects to this Interrogatory on the ground that the

16   requested information is not identified with reasonable particularity. Responding Party objects

17   to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

18   harassing. Responding Party objects to this Interrogatory on the grounds that it is so broad on its

19   face that it requires production of irrelevant information. Responding Party objects to this

20   Interrogatory to the extent that the information requested is equally known to Propounding Party.

21       Subject to and without waiving the foregoing objections, Responding Party responds as

22   follows: A list of Responding Party's employees, agents, managers, public relations

23   representatives, contact persons, and other persons affiliated with Responding Party is publicly

24   available on the internet.

25   **INTERROGATORY NO. 13:**

26       Identify and describe all other instances in which YOU have contended NEESON'S

27   INTELLECTUAL PROPERTY were used without authorization.

28   / / /

16

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

**RESPONSE TO INTERROGATORY NO. 13:**

1       Responding Party incorporates by this reference each and every general objection as though fully set forth herein. Responding Party objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine. Responding Party objects to this Interrogatory on the ground that the requested information is not identified with reasonable particularity. Responding Party objects to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and harassing. Responding Party objects to this Interrogatory on the grounds that it is so broad on its face that it requires production of irrelevant information. Responding Party further objects to this Interrogatory to the extent that it seeks information that is not relevant to the claims, defenses, or subject matter of the instant action, nor reasonably calculated to lead to the discovery of admissible evidence in violation of Code of Civil Procedure section 2017.010, et seq.

**INTERROGATORY NO. 14:**

State all other legal actions in which NEESON'S INTELLECTUAL PROPERTY RIGHTS were at issue.

**RESPONSE TO INTERROGATORY NO. 14:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein. Responding Party objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine. Responding Party objects to this Interrogatory on the ground that the requested information is not identified with reasonable particularity. Responding Party objects to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and harassing. Responding Party objects to this Interrogatory on the grounds that it is so broad on its face that it requires production of irrelevant information. Responding Party further objects to this Interrogatory to the extent that it seeks information that is not relevant to the claims, defenses, or subject matter of the instant action, nor reasonably calculated to lead to the discovery of admissible evidence in violation of Code of Civil Procedure section 2017.010, et

17

seq.  Responding Party objects to this Interrogatory to the extent that it calls for a legal conclusion.

**INTERROGATORY NO. 15:**

State all facts that support YOUR contention that FIRST IMPRESSIONS "acted willfully, maliciously, and oppressively," as alleged in paragraph 25 of YOUR complaint in this ACTION.

**RESPONSE TO INTERROGATORY NO. 15:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the requested information is not identified with reasonable particularity.  Responding Party objects to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its face that it requires production of irrelevant information.  Responding Party objects to this Interrogatory to the extent that it calls for a legal conclusion.  Responding Party objects to this Interrogatory to the extent that the information requested is equally known to Propounding Party.

Subject to and without waiving the foregoing objections, Responding Party responds as follows: First Impressions knowingly and deliberately advertised and sold products using and trading upon Responding Party's photograph, likeness, image and identity, without Responding Party's permission.  The particulars of the usage are identified in the documents produced by the parties in discovery.  Investigation and discovery are continuing and Responding Party reserves its right to amend and/or supplement its response hereto.

**INTERROGATORY NO. 16:**

State all facts that support YOUR contention that this is an "exceptional case" as to FIRST IMPRESSIONS pursuant to 15 U.S.C. section 1117(a) of the Lanham Act, as alleged in paragraphs 37 and 43 of YOUR complaint in this ACTION.

/ / /

18

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

- 158 -

**RESPONSE TO INTERROGATORY NO. 16:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein. Responding Party objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine. Responding Party objects to this Interrogatory on the ground that the requested information is not identified with reasonable particularity. Responding Party objects to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and harassing. Responding Party objects to this Interrogatory on the grounds that it is so broad on its face that it requires production of irrelevant information. Responding Party objects to this Interrogatory to the extent that it calls for a legal conclusion. Responding Party objects to this Interrogatory to the extent that it prematurely calls for expert opinion and analysis in violation of California Code of Civil Procedure section 2034 and *Nacht & Lewis Architects, Inc. v. Superior Court*, 47 Cal. App. 4th 214 (1996).

Subject to and without waiving the foregoing objections, Responding Party responds as follows: First Impressions knowingly and deliberately advertised and sold products using and trading upon Responding Party's photograph, likeness, image and identity, without Responding Party's permission. The particulars of the usage are identified in the documents produced by the parties in discovery. Investigation and discovery are continuing and Responding Party reserves its right to amend and/or supplement its response hereto.

**INTERROGATORY NO. 17:**

State all facts that support YOUR contention that DEFENDANTS' alleged use of NEESON'S INTELLECTUAL PROPERTY is "likely to confuse, mislead, and/or deceive the consuming public and trade by creating the false impression that [DEFENDANTS'] companies, products, and services are or were approved, sponsored, endorsed, guaranteed by, and/or are in some way affiliated or associated with [PLAINTIFFS]" as alleged in paragraphs 34 and 41 of YOUR complaint in this ACTION.

**RESPONSE TO INTERROGATORY NO. 17:**

Responding Party incorporates by this reference each and every general objection as

19

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

- 159 -

though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the requested information is not identified with reasonable particularity.  Responding Party objects to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its face that it requires production of irrelevant information.  Responding Party objects to this Interrogatory to the extent that it calls for a legal conclusion.  Responding Party objects to this Interrogatory to the extent that it prematurely calls for expert opinion and analysis in violation of California Code of Civil Procedure section 2034 and *Nacht & Lewis Architects, Inc. v. Superior Court*, 47 Cal. App. 4th 214 (1996).

Subject to and without waiving the foregoing objections, Responding Party responds as follows: First Impressions knowingly and deliberately advertised and sold products using and trading upon Responding Party's photograph, likeness, image and identity, without Responding Party's permission.  The particulars of the usage are identified in the documents produced by the parties in discovery.  Investigation and discovery are continuing and Responding Party reserves its right to amend and/or supplement its response hereto.

**INTERROGATORY NO. 18:**

IDENTIFY all PERSONS who claim to have been, or whom YOU believe were, confused about the source, origin, affiliation, endorsement, or sponsorship of DEFENDANTS' companies, products, or services as a result of DEFENDANTS' alleged use of NEESON'S INTELLECTUAL PROPERTY.

**RESPONSE TO INTERROGATORY NO. 18:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the requested information is not identified with reasonable particularity.  Responding Party objects

20

1  to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

2  harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its

3  face that it requires production of irrelevant information.

4        Subject to and without waiving the foregoing objections, Responding Party responds as

5  follows: Responding Party is presently unaware of the requested information.  Investigation and

6  discovery are continuing and Responding Party reserves its right to amend and/or supplement its

7  response hereto.

8  **INTERROGATORY NO. 19:**

9        Describe each element and component of the "trade dress" that YOU contend was used

10  without authorization as alleged in paragraph 40 and in the Fourth Cause of Action in YOUR

11  complaint in this ACTION.

12  **RESPONSE TO INTERROGATORY NO. 19:**

13        Responding Party incorporates by this reference each and every general objection as

14  though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

15  seeks information protected from disclosure by the attorney-client privilege and/or attorney

16  work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

17  requested information is not identified with reasonable particularity.  Responding Party objects

18  to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

19  harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its

20  face that it requires production of irrelevant information.  Responding Party objects to this

21  Interrogatory to the extent that it prematurely calls for expert opinion and analysis in violation of

22  California Code of Civil Procedure section 2034 and *Nacht & Lewis Architects, Inc. v. Superior*

23  *Court*, 47 Cal. App. 4th 214 (1996).

24        Subject to and without waiving the foregoing objections, Responding Party Responds as

25  follows: Defendants used Responding Party's photograph, likeness, image and identity, without

26  permission, in Defendants' advertisements, marketing and promotion for the sale of commercial

27  products and services.  Responding Party also refers to the advertisements at issue produced by

28  the parties in discovery.

21

**INTERROGATORY NO. 20:**

State all facts to support YOUR contention that DEFENDANTS' use of the movie still image from The A-Team (2010) film at issue in this ACTION, to the extent and in the manner it was used, advertised, promoted, or marketed DEFENDANTS' companies, products, or services.

**RESPONSE TO INTERROGATORY NO. 20:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein. Responding Party objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine. Responding Party objects to this Interrogatory on the ground that the requested information is not identified with reasonable particularity. Responding Party objects to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and harassing. Responding Party objects to this Interrogatory on the grounds that it is so broad on its face that it requires production of irrelevant information. Responding Party objects to this Interrogatory on the grounds that it is vague, ambiguous, and unintelligible.

DATED: August 22, 2013                    HARDER MIRELL & ABRAMS LLP


                                          By: _____

                                          CHARLES J. HARDER
                                          Attorney for Plaintiffs BRADLEY COOPER and
                                          LIAM NEESON

22

PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATERS, INC.

- 162 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I have read the foregoing PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY DEFENDANT FIRST IMPRESSIONS THEME THEATERS, INC. and know its contents.

I am a party to this action. The matters stated in the foregoing document are true of my own knowledge, except as to those matters to which are stated on information and belief, and as to those matters, I believe them to be true.

Executed on ___8/22/13___, at ___N.Y.C.___ ___N.Y___.
              (Date)           (City)       (State)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

LIAM NEESON_____
Print Name of Signatory          Signature

-1-
VERIFICATION

- 163 -

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 1801 Avenue of the Stars, Suite 1120, Los Angeles, CA 90067.

On August 22, 2013, I served true copies of the following document(s) described as **PLAINTIFF LIAM NEESON'S RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY DEFENDANT FIRST IMPRESSIONS THEME THEATERS, INC.** in the manner described below, on the interested parties in this action as follows:

**[ ]    BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package provided by the overnight service carrier and addressed to the persons at the addresses listed directly below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight service carrier or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents.

**[X]    BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed directly below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Harder Mirell & Abrams LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[ ]    BY ELECTRONIC MAIL [As marked]:** I e-mailed the document(s) to the party(ies)' electronic mail address(es) as indicated below.

**[ ]    BY HAND DELIVERY:** I caused the document(s) to be hand-delivered to the party(ies) at the addresses as listed below.

David W. Swift, Esq.
Laura D. Castner, Esq.
KINSELLA WEITZMAN ISER KUMP &
ALDISERT LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, CA 90401
Telephone: (310) 566-9800
Facsimile: (310) 566-9850
Email: dswift@kwikalaw.com
Email: lcastner@kwikalaw.com

*Attorneys for Defendant*
VUTEC CORPORATION

1  James C. Potepan, Esq.
   LECLAIRRYAN, LLP
2  725 S. Figueroa Street, Suite 350
   Los Angeles, California 90017
3  Telephone: (213) 488-0503
   Facsimile: (213) 624-3755
4  Email: james.potepan@leclairryan.com

*Attorneys for Defendant*
FIRST IMPRESSIONS THEME THEATERS, INC.

5       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

6

7       Executed on August 22, 2013, at Los Angeles, California.

8

9       Molly Odell

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 165 -

**EXHIBIT  M**

1   HARDER MIRELL & ABRAMS LLP
    CHARLES J. HARDER (State Bar No. 184593)
2   DOUGLAS E. MIRELL (State Bar No. 94169)
    SARAH E. LUPPEN (State Bar No. 258559)
3   KIMBERLINA N. MCKINNEY (State Bar No. 286349)
    1801 Avenue of the Stars, Suite 1120
4   Los Angeles, CA 90067
    Telephone:    (424) 203-1600
5   Facsimile:    (424) 203-1601
    Email:        CHarder@HMAfirm.com
6
    Attorneys for Plaintiffs
7   BRADLEY COOPER and LIAM NEESON

8                   UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  BRADLEY COOPER, an individual; and        Case No. CV 13-2951 SJO (SHx)
    LIAM NEESON, an individual,
12                                             PLAINTIFF LIAM NEESON'S
              Plaintiffs,                      SUPPLEMENTAL RESPONSES TO
13                                             INTERROGATORIES (SET ONE)
        vs.                                    PROPOUNDED BY DEFENDANT FIRST
14                                             IMPRESSIONS THEME THEATRES,
    VUTEC CORPORATION, a Florida               INC.
15  Corporation; FIRST IMPRESSIONS THEME
    THEATRES, INC., a Florida corporation; and
16  DOES 1-20, inclusive,

17            Defendants.

18
    VUTEC CORPORATION, a Florida
19  Corporation,

20            Cross-Complainant,

21      vs.

22  FIRST IMPRESSIONS THEME THEATRES,
    INC., a Florida corporation.
23
              Cross-Defendant.
24

25  PROPOUNDING PARTY:      Defendant FIRST IMPRESSIONS THEME
                            THEATRES, INC.
26
    RESPONDING PARTY:       Plaintiff LIAM NEESON
27
    SET NO.:                ONE
28

                                      1
PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) BY
FIRST IMPRESSIONS THEME THEATRES, INC.

- 166 -

1   Plaintiff LIAM NEESON (herein "Responding Party") hereby provides supplemental

2   responses to Interrogatories (Set One) propounded by defendant FIRST IMPRESSIONS

3   THEME THEATERS, INC. (herein "Propounding Party") as follows:

4                                  **PRELIMINARY STATEMENT**

5       The following Responses, and each of them, are based upon information and writings

6   presently available to and located by Responding Party and its attorneys.  Responding Party has

7   not completed an investigation of the facts or discovery proceedings in this case and has not

8   completed its preparation for trial.  The following Responses, and each of them, are made

9   without prejudice to Responding Party's right to produce evidence based on subsequently

10  discovered facts or documents, and to offer such facts or documents in evidence at the time of

11  trial.  The fact that Responding Party has responded to an Interrogatory should not be taken as an

12  admission that Responding Party accepts or admits the existence of any facts set forth or

13  assumed by such Interrogatory, or that such response constitutes admissible evidence.  The

14  following Responses, and each of them, are made without prejudice to the rights of Responding

15  Party to introduce evidence of any subsequently discovered facts or documents which

16  Responding Party may later obtain, discover or recall.

17      The information which could or would form the basis of Responses to the instant

18  interrogatories, in whole or in part, are still in the process of being identified by Responding

19  Party, and all such relevant information has not yet been identified, examined or produced.  In

20  addition, the significance of documents which may now be in the possession of Responding

21  Party may only become apparent upon further discovery and review of those documents in the

22  context of other documents which have not yet been identified or obtained in the context of later

23  testimony or discovery which may establish their relevance.

24      These Responses are made solely for the purposes of this litigation.  Any Responses to

25  the Interrogatories are being supplied by Responding Party subject to all objections as to

26  competence, relevance, materiality, propriety and admissibility, and to any and all other

27  objections on any ground that would require the exclusion of any response or portion thereof, if

28  such response were offered in evidence in Court, all of which objections and grounds are

2

PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) BY
FIRST IMPRESSIONS THEME THEATRES, INC.

1    expressly reserved and may be interposed at the time of trial.

2        Responding Party accordingly reserves the right to alter or modify any and all Responses

3    set forth herein below as additional facts may be ascertained, documents discovered, analyses

4    made, witnesses identified, additional parties identified, legal research completed, and

5    contentions made or expanded.

6                              **GENERAL OBJECTIONS**

7        1.    Responding Party objects to the definitions in the Interrogatories to the extent that

8    they seek to impose upon Responding Party obligations not imposed, or beyond those imposed,

9    by the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") or the Local Rules of the United

10   States District Court for the Central District of California.

11       2.    Responding Party objects to the definition of the terms "NEESON," "YOU," and

12   "YOUR," to the extent that the definition purports to extend to any person or entity other than

13   Liam Neeson, and to persons and entities not subject to Responding Party's control.  Such

14   definition is beyond the scope of discovery permitted by Fed. R. Civ. P. 34, and is overbroad,

15   oppressive, unduly burdensome, and harassing.  Accordingly, the following responses are limited

16   to Liam Neeson, unless otherwise indicated in the response.

17       3.    Responding Party objects generally to each and every Interrogatory to the extent it

18   calls for information that is protected by the attorney-client privilege and/or the attorney-work

19   product doctrine.

20       4.    Responding Party objects generally to each and every Request to the extent it

21   purports to deviate from or expand upon a litigant's discovery rights under the Fed. R. Civ. P.,

22   Federal Rules of Evidence, or other statutory or case law governing requests to produce

23   documents and things.

24       3.    Responding Party objects generally to each and every Interrogatory to the extent it

25   requests any information concerning the content of conversations of any other party to this action

26   or documents in the possession of any other party to this action, other than the Responding Party,

27   in that such information is equally accessible to all parties.

28       4.    Pursuant to the JOINT STIPULATED PROTECTIVE ORDER (herein defined as

3

PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) BY
FIRST IMPRESSIONS THEME THEATRES, INC.

1  the Stipulation and Protective Order Regarding the Treatment of Confidential Information

2  Produced in Discovery, ordered on July 02, 2013), Responding Party objects to the use of any

3  private and/or confidential business or proprietary information or trade secrets that the

4  Propounding Party does not treat in accordance with such STIPULATED PROTECTIVE

5  ORDER.

6      5.    Responding Party objects to each and every Interrogatory to the extent that the

7  information sought is not specified with sufficient particularity or is not relevant to this action.

8  Such overbreadth renders the Interrogatory burdensome and oppressive.

9      6.    Responding Party objects to these Interrogatories, and each of them, to the extent

10 they are not limited to the subject matter of this action and thus are irrelevant, immaterial and not

11 reasonably calculated to lead to the discovery of admissible evidence.

12     7.    Responding Party objects to these interrogatories, and each of them, to the extent

13 they are unduly burdensome, oppressive, unreasonably cumulative, duplicative and overbroad.

14     8.    Responding Party objects to these Interrogatories, and each of them, to the extent

15 they seek information to which Propounding Party has equal access.

16         **SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

17     The Preliminary Statement and General Objections are incorporated into each response

18 below, regardless of whether specifically mentioned.  The specific objections set forth below are

19 not a waiver, in whole or in part, of any of the foregoing General Objections.  Subject to and

20 without waiver of these objections, Liam Neeson responds below.

21 **INTERROGATORY NO. 1:**

22     Identify and describe each and every use of NEESON'S INTELLECTUAL PROPERTY

23 by DEFENDANTS that YOU contend in this ACTION was unauthorized.

24 **RESPONSE TO INTERROGATORY NO. 1:**

25     Responding Party incorporates by this reference each and every general objection as

26 though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

27 seeks information protected from disclosure by the attorney-client privilege and/or attorney

28 work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

4

PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATRES, INC.

- 169 -

1   requested information is not identified with reasonable particularity.  Responding Party objects

2   to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

3   harassing.  Responding Party objects to this Interrogatory to the extent that it calls for a legal

4   conclusion.  Responding Party objects to this Interrogatory to the extent that it prematurely calls

5   for expert opinion and analysis in violation of California Code of Civil Procedure section 2034

6   and *Nacht & Lewis Architects, Inc. v. Superior Court*, 47 Cal. App. 4th 214 (1996).

7        Subject to and without waiving the foregoing objections, Responding Party Responds as

8   follows:

9        Defendants used Responding Party's photograph, likeness, image and identity, without

10  permission, in Defendants' advertisements, marketing and promotion for the sale of commercial

11  products and services.  As of the date of these responses, Responding Party is unaware of any

12  additional advertisements at issue other than those produced by the parties in discovery and the

13  communications and invoices reflecting such usage, specifically see BATES No. FI000001-4,

14  FI000009-44, FI000070-78, FI000079-80, FI000091-109, VUTEC000062-65, VUTEC000067-

15  70, VUTEC000072-75, LN000001-28, LN000077-108, LN000214-25, BC000001-28,

16  BC000095-126, BC000233-244.  Investigation and discovery are continuing and Responding

17  Party reserves its right to amend and/or supplement its response hereto.

18  **INTERROGATORY NO. 6:**

19       Identify and describe each advertisement that YOU contend in this ACTION was an

20  advertisement published by FIRST IMPRESSIONS without authorization.

21  **RESPONSE TO INTERROGATORY NO. 6:**

22       Responding Party incorporates by this reference each and every general objection as

23  though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

24  seeks information protected from disclosure by the attorney-client privilege and/or attorney

25  work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

26  requested information is not identified with reasonable particularity.  Responding Party objects

27  to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

28  harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its

PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATRES, INC.

1   face that it requires production of irrelevant information.

2       Subject to and without waiving the foregoing objections, Responding Party responds as

3   follows:

4       Responding Party holds Defendants jointly and severally liable.  As of the date of these

5   responses, Responding Party is unaware of any additional advertisements at issue other than

6   those produced by the parties in discovery and the communications and invoices reflecting such

7   usage, specifically see BATES No. FI000001-4, FI000009-44, FI000070-78, FI000079-80,

8   FI000091-109, VUTEC000062-65, VUTEC000067-70, VUTEC000072-75, LN000001-28,

9   LN000077-108, LN000214-25, BC000001-28, BC000095-126, BC000233-244.  Investigation

10  and discovery are continuing and Responding Party reserves its right to amend and/or

11  supplement its response hereto.

12  **INTERROGATORY NO. 7:**

13      Identify and describe each advertisement that YOU contend in this ACTION was an

14  advertisement published by Defendant Vutec Corporation without authorization.

15  **RESPONSE TO INTERROGATORY NO. 7:**

16      Responding Party incorporates by this reference each and every general objection as

17  though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

18  seeks information protected from disclosure by the attorney-client privilege and/or attorney

19  work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

20  requested information is not identified with reasonable particularity.  Responding Party objects

21  to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

22  harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its

23  face that it requires production of irrelevant information.

24      Subject to and without waiving the foregoing objections, Responding Party responds as

25  follows:

26      Responding Party holds Defendants jointly and severally liable.  As of the date of these

27  responses, Responding Party is unaware of any additional advertisements at issue other than

28  those produced by the parties in discovery and the communications and invoices reflecting such

6

1   usage, specifically see BATES No. FI000001-4, FI000009-44, FI000070-78, FI000079-80,

2   FI000091-109, VUTEC000062-65, VUTEC000067-70, VUTEC000072-75, LN000001-28,

3   LN000077-108, LN000214-25, BC000001-28, BC000095-126, BC000233-244.  Investigation

4   and discovery are continuing and Responding Party reserves its right to amend and/or

5   supplement its response hereto.

6   **INTERROGATORY NO. 12:**

7        IDENTIFY all of NEESON'S talent agents, outside counsel, and business managers,

8   including publicity managers.

9   **RESPONSE TO INTERROGATORY NO. 12:**

10       Responding Party incorporates by this reference each and every general objection as

11   though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

12   seeks information protected from disclosure by the attorney-client privilege and/or attorney

13   work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

14   requested information is not identified with reasonable particularity.  Responding Party objects

15   to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

16   harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its

17   face that it requires production of irrelevant information.  Responding Party objects to this

18   Interrogatory to the extent that the information requested is equally known to Propounding Party.

19       Subject to and without waiving the foregoing objections, Responding Party responds as

20   follows:

21       A list of Responding Party's employees, agents, managers, public relations

22   representatives, contact persons, and other persons affiliated with Responding Party is as

23   follows:

24        • Chris Andrews; Talent Agent-Theatrical & Television; Creative Artists Agency

25        • Steven Arcieri; Talent Agent-Voice & Commercial; Arcieri & Associates

26        • Alan Nierob; Publicist; Rogers & Cowan

27        • Mark Stankevich; Legal Representative; Stankevich-Gochman LLP

28        • Arnie Herrmann; Business Manager; Citrin Cooperman & Company LLP

PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) BY
FIRST IMPRESSIONS THEME THEATRES, INC.

1       • Sue Latimer; Talent Agent-UK; Artists Rights Group (ARG)

2       All of the above individuals must be contacted through Plaintiffs' counsel of record.

3    **INTERROGATORY NO. 13:**

4       Identify and describe all other instances in which YOU have contended NEESON'S

5    INTELLECTUAL PROPERTY were used without authorization.

6    **RESPONSE TO INTERROGATORY NO. 13:**

7       Responding Party incorporates by this reference each and every general objection as

8    though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it

9    seeks information protected from disclosure by the attorney-client privilege and/or attorney

10   work-product doctrine.  Responding Party objects to this Interrogatory on the ground that the

11   requested information is not identified with reasonable particularity.  Responding Party objects

12   to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and

13   harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its

14   face that it requires production of irrelevant information.   Responding Party further objects to

15   this Interrogatory to the extent that it seeks information that is not relevant to the claims,

16   defenses, or subject matter of the instant action, nor reasonably calculated to lead to the

17   discovery of admissible evidence in violation of Code of Civil Procedure section 2017.010, et

18   seq.

19      Subject to and without waiving the foregoing objections, Responding Party responds as

20   follows:

21      Responding Party is currently unaware of any instances other than those which are the

22   subject of this action.  Investigation and discovery are continuing and Responding Party reserves

23   its right to amend and/or supplement its response hereto.

24   **INTERROGATORY NO. 14:**

25      State all other legal actions in which NEESON'S INTELLECTUAL PROPERTY

26   RIGHTS were at issue.

27   **RESPONSE TO INTERROGATORY NO. 14:**

28      Responding Party incorporates by this reference each and every general objection as

8

PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) BY
FIRST IMPRESSIONS THEME THEATRES, INC.

though fully set forth herein.  Responding Party objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege and/or attorney work-product doctrine.  Responding Party objects to this Interrogatory on the ground that it is vague as to the terms "at issue."  Responding Party objects to this Interrogatory on the ground that the requested information is not identified with reasonable particularity.  Responding Party objects to this Interrogatory on the grounds that the Interrogatory is overbroad, burdensome, and harassing.  Responding Party objects to this Interrogatory on the grounds that it is so broad on its face that it requires production of irrelevant information.   Responding Party further objects to this Interrogatory to the extent that it seeks information that is not relevant to the claims, defenses, or subject matter of the instant action, nor reasonably calculated to lead to the discovery of admissible evidence in violation of Code of Civil Procedure section 2017.010, et seq.  Responding Party objects to this Interrogatory to the extent that it calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Responding Party responds as follows:

Responding Party is currently unaware of any such other legal actions.  Investigation and discovery are continuing and Responding Party reserves its right to amend and/or supplement its response hereto.

DATED: September 27, 2013            HARDER MIRELL & ABRAMS LLP


By: _____
DOUGLAS E. MIRELL
Attorney for Plaintiffs BRADLEY COOPER and LIAM NEESON

9

PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATRES, INC.

- 174 -

**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I have read the foregoing PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY DEFENDANT FIRST IMPRESSIONS THEME THEATRES. INC. and know its contents.

I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge, except as to those matters to which are stated on information and belief, and as to those matters, I believe them to be true.

Executed on ___24 / 9 / 13___ , at ___N.Y.C.___  ___N.Y___
                    (Date)                  (City)       (State)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_Liam Neeson_
Print Name of Signatory

                                              Signature

10

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 1801 Avenue of the Stars, Suite 1120, Los Angeles, CA 90067.

On September 27, 2013, I served true copies of the following document(s) described as **PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) PROPOUNDED BY DEFENDANT FIRST IMPRESSIONS THEME THEATRES, INC.** in the manner described below, on the interested parties in this action as follows:

[ ]    **BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package provided by the overnight service carrier and addressed to the persons at the addresses listed directly below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight service carrier or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents.

[X]    **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed directly below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Harder Mirell & Abrams LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

[ ]    **BY ELECTRONIC MAIL [As marked]:** I e-mailed the document(s) to the party(ies)' electronic mail address(es) as indicated below.

[ ]    **BY HAND DELIVERY:** I caused the document(s) to be hand-delivered to the party(ies) at the addresses as listed below.

David W. Swift, Esq.                            *Attorneys for Defendant*
Laura D. Castner, Esq.                          VUTEC CORPORATION
KINSELLA WEITZMAN ISER KUMP &
ALDISERT LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, CA 90401
Telephone: (310) 566-9800
Facsimile: (310) 566-9850
Email: dswift@kwikalaw.com
Email: lcastner@kwikalaw.com

11

PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) BY
FIRST IMPRESSIONS THEME THEATRES, INC.

1 | James C. Potepan, Esq.
LECLAIRRYAN, LLP

*Attorneys for Defendant*
FIRST IMPRESSIONS THEME THEATRES, INC.

2 | 725 S. Figueroa Street, Suite 350
Los Angeles, California 90017

3 | Telephone: (213) 488-0503
Facsimile:  (213) 624-3755

4 | Email:  james.potepan@leclairryan.com

5 |     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

6 |

7 |     Executed on September 27, 2013, at Los Angeles, California.

8 |

9 | Molly Odell

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

PLAINTIFF LIAM NEESON'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES (SET ONE) BY FIRST IMPRESSIONS THEME THEATRES, INC.